Estate of Chmielewski: Tyznik, Administrator w. w. a., Appellant, v. Junak, Respondent.

*October 1—October 30, 1962.*

For the respondent there was a brief by *Nikolay, Jensen & Scott* of Medford, and oral argument by *Raymond H. Scott*.

DIETERICH, J. George Junak filed a claim on April 5, 1960, against the estate of Joseph Chmielewski, a Taylor county farmer, who died testate on February 6, 1960, without known heirs. The claim is based on two notes, one for $800, dated August 14, 1951, payable three years after date, plus interest, for a total amount of $1,145.55, and another for $8,000, dated August 28, 1951, payable ten years after date, plus interest, for a total amount of $11,440. The payee in each of the notes is George Junak.

The administrator with will annexed, appointed by the trial court, filed the following objections to the claim on September 16, 1961:

"That he has insufficient information regarding said claim to warrant allowance of the same, without a regular proof thereof in open court; and

"That he is informed and believes that the demand has been fully paid, or that such demand is not a valid claim against the deceased, or that said demand is fictitious and such notes are not based on any valid or valuable consideration, or are barred by the statute of limitations."

Hearings on the objections were had on October 12 and 17, 1961.

The record discloses that the $800 note introduced in evidence was in the possession of the claimant, George Junak. The $800 note was executed on August 14, 1951, with a due date thereon of August 14, 1954. The note was secured by a chattel mortgage also dated August 14, 1951, and recorded on the same date in the office of the register of deeds for Taylor county, bearing document No. 69005, covering a 1939 Ford automobile. A renewal of

this chattel mortgage on the 1939 Ford dated August 26, 1954, was recorded in the register of deeds office for Taylor county on August 26, 1954, bearing document No. 81597. The satisfaction of the chattel mortgage on the 1939 Ford, bearing document No. 101425, was recorded in the office of the register of deeds on November 6, 1958.

The $8,000 note was executed on August 28, 1951, with a due date thereon of August 28, 1961. The note was secured by a real-estate mortgage dated August 28, 1951, and recorded on that date, bearing document No. 138666. The real-estate mortgage was satisfied and recorded on August 29, 1951, bearing document No. 152876. The note was also secured by a chattel mortgage covering animals and farm machinery dated August 28, 1951, and recorded on the same date, bearing document No. 69165. A renewal of this chattel mortgage on the animals and farm machinery was dated and recorded on August 26, 1954, bearing document No. 81598. The satisfaction of the chattel mortgage on the animals and farm machinery was recorded in the office of the register of deeds for Taylor county on November 6, 1958.

The administrator with will annexed contends that the satisfaction of both the chattel mortgages and the real-estate mortgage raises the presumption that the $800 note and the $8,000 note have been paid and that the evidence used to rebut the presumption was based upon objectionable testimony and should not have been admitted by the trial court.

The statute disqualifies a party to a contract or a cause of action from testifying in his favor or in favor of any party to the cause of action claiming under him. Therefore, under this statute the objection must be directed to the competency of the witness in order to bar testimony in respect to transactions with the deceased.[1]

---

[1] Sec. 325.16, Stats. "TRANSACTIONS WITH DECEASED OR INSANE PERSONS. No party or person in his own behalf or interest, and no person from, through or under whom a party derives his interest or

No objections were made to the following testimony of the claimant:

Counsel for claimant: "*Q.* Now, Mr. Junak, I'm going to show you what has been marked here for identification as Exhibit 1 and Exhibit 8. Exhibit 1 purporting to be a note dated August 28, 1951, in the amount of $8,000, naming as payee George Junak, and purporting to have been signed by the deceased, Joseph Chmielewski. Exhibit 8 purporting to be a note dated August 14, 1951, in the amount of $800 and naming George Junak as payee. I'll ask you whether or not you are the person identified as the payee in each of these exhibits? *A.* Yes.

"*Q.* Now, Mr. Junak, referring first to Exhibit 8, how much money is due at this time or remains due on that note? *A.* $800.

"*Q.* Has any part of it been paid? *A.* No, none.

"*Q.* Showing you what has been marked as Exhibit 1, what, if anything, remains due at this time on Exhibit 1? *A.* I don't understand, I don't talk good.

"*Q.* The note is in the amount of $8,000? *A.* Yes.

"*Q.* How much money is now due on that note? *A.* All of it, he didn't pay me nothing."

Counsel for administrator opened the door to further transactions with the deceased by the following examination of the claimant, called adversely:

title, shall be examined as a witness in respect to any transaction or communication by him personally with a deceased or insane person in any civil action or proceeding, in which the opposite party derives his title or sustains his liability to the cause of action from, through or under such deceased or insane person, or in any action or proceeding in which such insane person is a party prosecuting or defending by guardian, unless such opposite party shall first, in his own behalf, introduce testimony of himself or some other person concerning such transaction or communication, and then only in respect to such transaction or communication of which testimony is so given or in respect to matters to which such testimony relates. And no stockholder, officer, or trustee of a corporation in its behalf or interest, and no stockholder, officer, or trustee of a corporation from, through or under whom a party derives his or its interest or title, shall be so examined, except as aforesaid."

Counsel for administrator: "*Q*. Did you also sign a satisfaction of chattel mortgage at one time? *A*. Yes, I did, on my house because he needs the money. . . .

"*Q*. Did you sign any satisfactions of a chattel mortgage at any time? *A*. I give him once release so he could sell few cows, that's all. . . .

"*Q*. You gave him a release? *A*. Yah, I give him a release to sell his cows, some of them, not all of them, so he paid the hospital bill. . . .

"*Q*. But you do remember that you signed a release so he could sell his cows on a chattel mortgage? *A*. On a chattel mortgage, Yes.

"*Q*. And were those the cows mentioned here in this document, Exhibit 10 [chattel mortgage] that you were permitting him to sell? *A*. I suppose, Yah.

"*Q*. And you released the whole mortgage? You didn't just partial release it did you? *A*. No, just give him, you know.

"*Q*. Give him a release? *A*. Release so he can sell few cows, that's all. He told me that."

The administrator contends that the trial court should have excluded the following testimony based upon objections made to the testimony by the counsel for administrator:

Counsel for claimant: "*Q*. Now, just a minute Mr. Junak, At the time that you made this satisfaction for the deceased, Mr. Chmielewski, this chattel mortgage satisfaction? *A*. Chattel mortgage, yah.

"*Q*. Did Mr. Chmielewski tell you why he wanted that?"

Counsel for administrator: "I object to that as being a transaction with the deceased."

Counsel for claimant: "Counsel has already opened the door, Your Honor, on his examination of the witness."

Counsel for administrator: "I asked him just as to what he signed. What he did."

Counsel for claimant: "The door is now open in reference to this transaction. He opened it himself."

By the Court: "He may answer."

Counsel for claimant: "*Q*. Did Mr. Chmielewski tell you what he wanted the satisfaction for? *A*. He told me he got to pay hospital bill."

Counsel for administrator: "I object to this as conversations with and transactions with a deceased person. *A.* He had a note on his car."

Counsel for administrator: "*Q.* Just a minute now. I'm objecting to this testimony, Your Honor, on the ground, or this witness that it's transactions with a deceased. There has not been a proper opening to permit such testimony."

Counsel for claimant: "The objection has already been ruled on."

By the Court: "He may answer."

Counsel for claimant: "*Q.* Now, go ahead and tell what Mr. Chmielewski told you at the time you signed this satisfaction. . . . *A.* He came to my house and says I got to pay my hospital bills, and I got some note on my car he says, can you give me satisfaction. Well, I says sure, next time you get the money you can pay me. I says, I told him you can sell some few cows if you want to, so I signed it. That's all it was.

"*Q.* At the time you signed that chattel-mortgage satisfaction, state whether or not you received any money from the deceased. *A.* I didn't."

Counsel for administrator: "Just a moment Judge, this is going way beyond anything that's stated here and I'll have to object to all this type of testimony and these questions, this witness answering to these type of questions. . . . This testimony is entirely improper."

Counsel for claimant: "Counsel has already opened the door, Your Honor, and examined this witness in reference to these transactions himself."

Counsel for administrator: "I examined this witness with reference to his signatures on the transaction and that's all."

Counsel for claimant: "That's right. That opens the door. Certainly you can't have the benefit of that without cross-examination."

By the Court: "What is your question?"

Counsel for claimant: "*Q.* My question is now, Mr. Junak, I'm referring you now to Exhibit 14, purporting to be the real-estate mortgage satisfaction that bears your signature. *A.* That's right.

"*Q.* Now, I ask you whether or not at the time you signed this document, did you receive any money from the deceased?"

Counsel for administrator: "I'll object to that Your Honor— *A*. I didn't receive no money."

Counsel for administrator: "This witness testifying to a transaction with the deceased."

By the Court: "My question here is, that he recites in that that the mortgage is fully paid and satisfied."

Counsel for claimant: "Correct."

By the Court: "Of course, he can't vary the terms of the contract from some—can he vary the effect of that instrument by now stating that he received nothing, that it hasn't been satisfied?"

Counsel for administrator: "He certainly cannot. It is a transaction with a deceased and we certainly do not intend that evidence to get in."

Counsel for claimant: "Of course, this document here is no evidence at all of the payment of the notes. These are two independent documents, and this is the principal document. Payment of the note would *ipso facto* extinguish the mortgage, but the reverse is not true. So, it becomes material to know whether or not the satisfaction, whether the mortgagor here actually received any money to extinguish the debt at the time this document was signed and delivered."

By the Court: "My question is this, does the recital in this satisfaction of the real-estate mortgage, that the mortgage, the real-estate mortgage is fully paid and satisfied, what is the effect of that?"

Counsel for claimant: "That is simply to show that the mortgage contract itself is fully paid and satisfied and that I'm not trying to contradict. I'm asking this witness whether he received any payment of the indebtedness that that mortgage secured at this time."

Counsel for administrator: "Now, Judge, that is out-and-out a transaction with a deceased person which is forbidden to be testified."

Counsel for claimant: "You already opened the door."

Counsel for administrator: "This is a written document that states the debt has been fully paid and satisfied."

By the Court: "He may answer."

Counsel for claimant: "*Q*. At the time you signed Exhibit 14, the mortgage, the real-estate mortgage satisfaction, I'll ask you whether or not you received any money from Mr. Chmielewski? *A*. No."

It is apparent from the record quoted, that the administrator waived the objection to the competency of the witness to testify to transactions with the deceased by examining him as to such transactions as an adverse party. *Estate of Menzner* (1926), 189 Wis. 340, 207 N. W. 703, and *Estate of Schaefer* (1952), 261 Wis. 431, 53 N. W. (2d) 427.

The record further discloses that all objections to claimant's testimony were made on the basis that such testimony pertained to transactions with a deceased. The objections interposed by counsel for the administrator were directed to the evidence and not to the competency of the witness to testify. The proper objections not having been made, the testimony is admissible. *Estate of Rohde* (1959), 8 Wis. (2d) 50, 98 N. W. (2d) 440; *Will of Schultz* (1948), 253 Wis. 86, 33 N. W. (2d) 169; and *Zimdars v. Zimdars* (1941), 236 Wis. 484, 295 N. W. 675.

After a careful review of the evidence we determine that the decision of the trial court is supported by the great weight and clear preponderance of the evidence.

*By the Court.*—Judgment affirmed.