In re the Estate of June Ann Christopherson,
Deceased:

Lori Bell, Pauline Devault, Joan Jameson, Mike
Kosobud, Debra Lawsing, and Susan Walter,
Appellants-Cross-Respondents,

v.

Mae Neugart, Individually and as Personal Representative of the Estate of June Ann Christopherson, Respondent-Cross-Appellant.

Court of Appeals

*No. 01–2533. Submitted on briefs April 17, 2002.—Decided
June 27, 2002.*

2002 WI App 180

(Also reported in 650 N.W.2d 52.)

971

On behalf of the appellants-cross-respondents, the cause was submitted on the briefs of *Jim Schernecker* of *Action Law, S.C.*, Madison.

On behalf of the respondent-cross-appellant Mae Neugart, individually, the cause was submitted on the briefs of *Fred D. Hollenbeck* of *Curran, Hollenbeck & Orton, S.C.*, Mauston.

On behalf of the respondent Mae Neugart, personal representative of the estate, the cause was submitted on the brief of *Charles A. Pollex* of *Hollman & Pollex Law Offices, L.L.P.*, Friendship.

Before Vergeront, P.J., Roggensack and Lundsten, JJ.

¶ 1. VERGERONT, P.J. This appeal arises out of a dispute concerning two bank accounts of the deceased, June Ann Christopherson. The bank accounts were in the names of Christopherson and Mae Neugart, Christopherson's sister and personal representative of the estate. Joan Jameson and Leonard Kosobud,[1] children of deceased siblings of Christopherson, sought to prove that the accounts were not true joint accounts and to have Neugart removed as personal representa-

[1] Leonard Kosobud died on December 1, 2000, and his heirs at law are now the interested persons in the Christopherson estate. We will refer to Jameson and the Kosobud heirs, collectively, as "Jameson" throughout this opinion.

tive. Jameson appeals the circuit court's decision that the bank accounts were true joint tenancies with right of survivorship to Neugart. She contends the court erred in interpreting WIS. STAT. § 885.16 (1999–2000),[2] the dead man's statute, to prevent her from calling Neugart adversely to testify on the creation of the joint accounts, and erred in excluding Neugart's adverse deposition testimony. Jameson also challenges the circuit court's decision allowing Neugart to continue to act as personal representative while the dispute over the accounts was being resolved, and its decision allowing the attorney representing Neugart in her capacity as personal representative to collect his fees from the estate. Neugart, as an individual, cross-appeals, contending that the attorney fees she incurred to protect her personal interests in the bank accounts should be paid by the estate.

¶ 2. We conclude: (1) WISCONSIN STAT. § 885.16 does not bar Jameson from calling Neugart adversely to testify to the communication and transaction with Christopherson concerning the bank accounts; (2) because Neugart, as an individual, is a party to the dispute over the bank accounts, her deposition may be used at the hearing on that issue for any purpose as provided in WIS. STAT. § 804.07(1)(b); (3) the court did not erroneously exercise its discretion in declining to remove Neugart as personal representative; (4) the court properly ordered that the estate pay the reasonable attorney fees Neugart incurred in successfully defending against Jameson's motion to remove her as personal representative; (5) the fees for Attorney Charles Pollex's services in defending against Jameson's

[2] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

claim of forgery on the bank account signature cards were not in the estate's interest and therefore those fees may not be paid by the estate; and (6) on the cross-appeal, the issue of the attorney fees Neugart incurred as an individual to protect her personal interest in the bank accounts will be reconsidered upon remand. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.[3]

## BACKGROUND

¶ 3. Christopherson died intestate on January 31, 1999, at the age of seventy-nine, after being admitted to the hospital two days earlier. The signature cards establishing the bank accounts as joint accounts were dated January 28, 1999.[4]

¶ 4. Jameson consented to Neugart's appointment as personal representative and to informal administration, and Neugart retained Attorney Pollex. Neugart, as personal representative, filed an inventory stating the net value of Christopherson's property subject to administration was $293,402.55, and the net value of the property not subject to administration was $70,586.70, consisting of the two bank accounts, one of $70,226.23 and the other of $360.47. The accounts were described as jointly owned with Neugart.

¶ 5. In August 1999, after the bank notified Neugart that it would not release funds in the accounts

[3] Jameson also filed a motion on February 28, 2002, seeking double costs as a sanction for Neugart's alleged violation of Wis. Stat. Rule 809.19(3). We hereby deny Jameson's motion.

[4] The signature cards stated: "Joint Accounts: This account/certificate of deposit is jointly owned by the parties named hereon. Upon the death of any of them, ownership passes to the survivor(s). Sums on deposit are payable upon the request of any one of the depositors or any survivor."

without a court order directing to whom the bank should pay them, Neugart, as personal representative, filed a demand for formal proceedings on that issue under WIS. STAT. § 865.10. About the same time, Attorney Fred Hollenbeck filed a notice stating that he had been retained by Neugart. A status/scheduling conference was eventually held on March 2, 2000, by which time Jameson had retained counsel. A hearing was set for July 7, 2000, on Jameson's contention that the signatures on the cards establishing the accounts as joint accounts were not Christopherson's signatures but were forged.

¶ 6. On April 28, 2000, Jameson filed a motion to stay the July 7 hearing and to amend the scheduling order. The accompanying affidavit of Jameson's counsel averred that Neugart had refused to provide handwriting exemplars, and that Jameson had filed a separate action against Neugart in which she sought to have Neugart removed as personal representative because of Neugart's failure to collect the joint bank account funds for the estate.[5] The motion asked for an order staying this case "pending disposition of the material issues herein, including whether Mae Neugart should be removed as personal representative." The court denied the motion for a stay, concluding there was no reason not to proceed with the July 7 hearing as scheduled. The court also took up the issue of removing Neugart as personal representative and concluded it was not appropriate to remove her as personal representative at that point because the accounts in dispute were in control of the bank. The court added that if Jameson prevailed on her claim regarding the accounts, the

---

[5] The separate civil action was ultimately dismissed.

question of Neugart's appointment as personal representative could be considered then.

¶ 7. On June 27, 2000, Jameson filed a motion to remove Neugart as personal representative of the estate, asserting her failure to collect the two joint accounts and other property for the estate, and raising various issues concerning the disposition of certain real property of the estate. The hearing on July 7 went ahead without a ruling on this motion. Jameson presented an expert who testified that Christopherson's signatures on the cards were forged. Attorney Pollex appeared on behalf of the estate; Attorney Hollenbeck appeared on behalf of Neugart; and each presented an expert who testified that the signature cards were signed by Christopherson.

¶ 8. During the hearing Jameson attempted to introduce as evidence Neugart's deposition, which was taken adversely.[6] Attorney Hollenbeck objected, asserting that none of the factors in WIS. STAT. § 804.07(1)[7] applied and also that Neugart was "prohibited from testifying in connection with the Deadman's Statute."

---

[6] Neugart's deposition was taken by Jameson's counsel. Neugart testified that the only reason she obtained the signature cards was to cure overdraft problems of Christopherson and she did not have any intention to take over either account as a joint owner. She acknowledged she told Christopherson the reason for the signature cards was to see that the bounced checks were made good; that she did not tell Christopherson that by signing the accounts, Neugart would have a joint interest with a right of survivorship; and that Christopherson did not say anything about giving up an interest in either account. Neugart also testified that her daughter, who was with her, told Christopherson that Christopherson had to have somebody take care of her finances and that signing the cards was what the bank told Christopherson to do.

[7] WISCONSIN STAT. § 804.07 provides in part:

The court ruled the deposition was not admissible, apparently relying on Wis. Stat. § 804.07(1) rather than

> **Use of depositions in court proceedings. (1)** Use of depositions. At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:
>
> (a) Any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of deponent as a witness.
>
> (b) The deposition of a party or of anyone who at the time of taking the deposition was an officer, director, or managing agent or employee or a person designated under s. 804.05(2)(e) or 804.06(1) to testify on behalf of a public or private corporation, limited liability company, partnership or association or governmental agency which is a party may be used by an adverse party for any purpose.
>
> (c) 1. The deposition of a witness other than a medical expert, whether or not a party, may be used by any party for any purpose if the court finds any of the following:
>
> a. That the witness is dead.
>
> b. That the witness is at a greater distance than 30 miles from the place of trial or hearing, or is out of the state, and will not return before the termination of the trial or hearing, unless it appears that the absence of the witness was procured by the party offering the deposition.
>
> c. That the witness is unable to attend or testify because of age, illness, infirmity or imprisonment.
>
> d. That the party offering the deposition has been unable to procure the attendance of the witness by subpoena.
>
> e. Upon application and notice, that exceptional circumstances exist that make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used.

the dead man's statute. At the conclusion of the hearing, the court determined that Christopherson had signed the signature cards. The issue whether the account was one of convenience rather than a true joint tenancy was to be determined at a later time—which turned out to be July 10, 2001.[8]

¶ 9. In the meantime, on December 1, 2000, Neugart, as personal representative, filed a motion for the appointment of a special administrator.[9] The basis for this motion, set forth in the accompanying affidavit of Attorney Pollex, was that Neugart had a conflict of interest due to the dispute over ownership of the two bank accounts, "which disqualifies [her] from acting as personal representative of the estate during the resolution of this particular issue." At the hearing on this motion on April 25, 2001, Neugart, individually, represented by Attorney Hollenbeck, opposed the motion. Jameson supported the motion. The court determined that a conflict of interest existed and appointed a special administrator. However, at Attorney Pollex's suggestion, and without an objection from Jameson's counsel, the court limited the appointment to the assets of the disputed bank accounts, allowing Neugart to remain the personal representative of the estate for all other purposes until further order of the court.

---

[8] The delay in holding this hearing and other delays were due in part to the death of Leonard Kosobud on December 1, 2000.

[9] On September 12, 2000, Jameson had filed an amended motion requesting that Neugart be removed as personal representative, asserting essentially the same grounds as in the June 27 motion.

¶ 10. At the July 10, 2001 hearing, the issues before the court were: (1) whether the joint accounts were for convenience only or were true joint accounts; (2) whether Neugart should be removed as personal representative of the estate; and (3) whether Neugart's attorney fees should be paid by the estate. The special administrator was present, but had informed the court and counsel that he was not going to take an active role on the contested issues.

¶ 11. On the issue of the bank accounts, Attorney Hollenbeck represented Neugart as an individual. Jameson wished to call Neugart adversely to testify concerning her conversation with Christopherson and to have her deposition admitted into evidence.[10] However, Neugart had sought and obtained a pretrial ruling that, based on the dead man's statute, Wis. Stat. § 885.16, no party with an interest in the estate could question or elicit any testimony from Neugart regarding the communication or transaction between Christopherson and her. The court also refused to admit Neugart's deposition testimony into evidence, based on its prior ruling that her deposition testimony was inadmissible. Jameson had no other evidence. The court therefore determined there was no proof that the accounts were for convenience only and thus no evidence to rebut the presumption that they were joint accounts with the right of survivorship.[11]

---

[10] Jameson offered transcripts of the depositions of other witnesses, which the court also excluded. However, those depositions are not at issue on this appeal.

[11] WISCONSIN STAT. § 705.04 provides:

Right of survivorship. (1) Sums remaining on deposit at the death of a party to a joint account belong to the surviving party

¶ 12. On the issue of whether Neugart should be removed as personal representative, Attorney Pollex represented Neugart as personal representative. The court heard testimony regarding Neugart's handling of various assets of the estate and the disposition of real estate held in the estate. It determined that Neugart should not be removed as personal representative.

¶ 13. With respect to attorney fees, the court ordered Jameson to pay her own attorney's fees, Neugart to pay Attorney Hollenbeck's fees, and the estate to pay "all fees, costs and disbursements incurred by Attorney Pollex in connection with this matter."

## DISCUSSION

*WIS. STAT. § 885.16, the Dead Man's Statute*

■

¶ 14. Jameson asks that we reverse the court's determination that the accounts were true joint accounts with the right of survivorship because, she contends, the circuit court erred in construing and applying the dead man's statute.[12] She argues that WIS. STAT. § 885.16 may not be invoked defensively to prevent a party's own admissions from coming into evidence, but only to prevent someone from testifying in his or her own behalf regarding transactions or conversations with a deceased person. According to Jameson, the purpose of the statute is to protect persons with interests opposed to the person who has transacted or

---

or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intention at the time the account is created.

[12] Jameson has not appealed the circuit court's determination that the signatures were Christopherson's.

communicated with the deceased party, not to protect the person with the opportunity to misrepresent that communication or transaction.

¶ 15. A circuit court's decision to admit or exclude evidence is a discretionary determination, and we affirm discretionary decisions if they have a reasonable basis and apply the correct law to the facts of record. *Hunzinger Constr. Co. v. Granite Ress. Corp.*, 196 Wis. 2d 327, 332, 538 N.W.2d 804 (Ct. App. 1995). However, the circuit court's interpretation and application of a statute to a given set of facts presents a question of law, which we review de novo. *State v. Setagord*, 211 Wis. 2d 397, 405–06, 565 N.W.2d 506 (1997).

¶ 16. WISCONSIN STAT. § 885.16 provides in relevant part:

> No party or person in the party's or person's own behalf or interest, and no person from, through, or under whom a party derives the party's interest or title, shall be examined as a witness in respect to any transaction or communication by the party or person personally with a deceased . . . person in any civil action or proceeding, in which the opposite party derives his or her title or sustains his or her liability to the cause of action from, through or under such deceased . . . person, . . . unless such opposite party shall first, in his or her own behalf, introduce testimony of himself or herself or some other person concerning such transaction or communication, and then only in respect to such transaction or communication of which testimony is so given or in respect to matters to which such testimony relates.

¶ 17. Although the wording of the statute is cumbersome, the core meaning is that it disqualifies a witness to a transaction or communication with a

decedent from testifying about that transaction or communication in his or her favor, or in the favor of any party to the case claiming under the witness. *Tyznik v. Junak*, 17 Wis. 2d 486, 488, 117 N.W.2d 601 (1962).[13] A long line of cases establishes that the statute does not preclude an opposing party from calling adversely a witness to a communication or transaction with a decedent. *See, e.g., In re Will of Hoppe*, 102 Wis. 54, 55, 78 N.W. 183 (1899) (decedent's son, who received no bequest under will, was not incompetent to testify under statute because he was called by proponents of will, the adverse party, and they were only ones who had any right to object to his competency); *Yungwirth v. Schultz*, 253 Wis. 86, 90, 33 N.W.2d 169 (1948) (circuit court erred in prohibiting party from calling witness to transaction with decedent where party's interest and witness's interest were adverse, and party did not claim under, by or through witness); *Nolan v. Standard Fire Ins. Co.*, 243 Wis. 30, 35, 9 N.W.2d 74 (1943) (testimony of witness which would have benefited examining party would not be in witness's own behalf or interest and, for this reason among others, did not come within statute); *Zimdars v. Zimdars*, 236 Wis. 484, 487–88, 295 N.W. 675 (1941) (circuit court properly overruled objection based on dead man's statute, among other reasons, because witness was examined adversely by party with opposing interest; examining party did not claim through witness and thus was not testifying in her own

[13] The objection based on the dead man's statute must be expressed as an objection to the competency of the witness. *Tyznik v. Junak*, 17 Wis. 2d 486, 488, 117 N.W.2d 601 (1962). This strictly-imposed requirement about the precise wording of the objection is the result of the disfavor with which courts view this statute, and one way the courts have limited its effect. *Giese v. Reist*, 91 Wis. 2d 209, 222, 281 N.W.2d 86 (1979).

behalf or interest); *Habrich v. Industrial Comm'n of Wis.*, 200 Wis. 248, 254, 227 N.W. 877 (1929) (statute prohibits a party from giving testimony in his own behalf or interest; however the testimony of Habrich was not given in his own interest, it was given upon his examination as an adverse party. "It has never been understood that this statute prohibited the examination of an adverse party against his interest."), *overruled on other grounds, Scholz v. Industrial Comm'n,* 267 Wis. 31, 41a, 65 N.W.2d 1 (1954).

¶ 18. In this case Neugart is neither seeking to testify on her own behalf or interest to the transaction with Christopherson concerning the bank accounts, nor is Jameson a person who derives her interest from Neugart. Therefore, we conclude the statute does not prohibit Neugart's testimony regarding her conversations with Christopherson.

¶ 19. Neugart's position is that she may invoke the statute to prevent herself from being called adversely. However, the phrase in the statute beginning "unless such opposite party . . ." plainly contemplates that the opposite party—in this case, Jameson—waives the ability to disqualify the witness—in this case, Neugart—by first introducing testimony in her (Jameson's) own behalf concerning the transaction or communication with the decedent. This phrase means that,

> if counsel for the opposite party questions the witness as to any part of the transaction or communication with the deceased under circumstances where the witness would be incompetent to so testify if proper objection were made under sec. 885.16, Stats., the benefit of the statute is waived and the door is opened whereby

counsel for the party may proceed by further question-
ing to bring out all details of the particular transaction
or communication.

*Johnson v. Mielke*, 49 Wis. 2d 60, 71, 181 N.W.2d 503
(1970), and cases cited therein; *see also Keller Imple-
ment Co. v. Eiting*, 52 Wis. 2d 460, 467, 190 N.W.2d 508
(1971). This "well-recognized principle," *Johnson*, 49
Wis. 2d at 71, is flatly inconsistent with Neugart's
position that she is disqualified by the statute even if
Jameson chooses to question her adversely.

¶ 20. Neugart relies on *Johnson* for her argument
that Jameson may not call her adversely, but we do not
read *Johnson* to support her position. In *Johnson*, the
decedent had changed certain accounts to joint ac-
counts with John Mielke and deeded her house to him,
and the estate sought to set aside these transfers.
Mielke's position was that he had absolute ownership of
these assets; Laura Belisle, Mielke's mother-in-law and
half-sister of the decedent, took the position that these
assets were given to Mielke for her benefit. When
Belisle sought to call Mielke to testify on the decedent's
intent with respect to the accounts, the estate objected
based on Wis. Stat. § 885.16, and the circuit court did
not let Mielke testify. On appeal, Belisle argued that
this was error, because Mielke would have testified
against his own interest: Belisle stated in her offer of
proof that she believed if Mielke testified he would say
that the decedent had instructed that the accounts be
used for her care and she be permitted to live in the
house. *Id.* at 73–74. The supreme court affirmed. It
reasoned that "since [Mielke] is interested in establish-
ing his own case [absolute ownership of the accounts
and house], the respondent–executrix should not be
denied at least some protection under sec. 885.16,

985

Stats., even though Mielke was being adversely examined by a codefendant." *Id.* at 74–75.

¶ 21. In *Johnson,* the estate's interests were in opposition to those of both Mielke and Belisle, and the estate objected to Mielke's testimony. In that three-way dispute, the estate would have lost the protection of the statute from Mielke's self-interested testimony not because it chose to waive that protection, but because a party whose interests were also adverse to those of the estate chose to have Mielke testify. That is not the situation in this case: the estate's interests here are aligned with those of Jameson on the issue of the bank accounts and there is no objection by any party (other than Neugart) to Jameson calling Neugart adversely. *Johnson* simply does not support the proposition that a witness to a communication or transaction with the decedent may proclaim himself or herself to be incompetent to testify under the statute even if no other party makes that objection.

¶ 22. Neugart also focuses on the definition of "disqualifying interest" used in *Johnson,* 49 Wis. 2d at 74, and *Bethesda Church v. Menning,* 72 Wis. 2d 8, 12, 239 N.W.2d 528 (1976). In *Johnson* and *Bethesda Church,* the Wisconsin Supreme Court noted, "the true test of the disqualifying interest of the witness is whether he will gain or lose by the direct legal operation and effect of the judgment, or that the record will be legal evidence for or against him in some other action."[14] *Johnson,* 49 Wis. 2d at 74; *Bethesda Church,* 72 Wis. 2d at 12–13. Her interest meets this definition,

---

[14] The issue in *Bethesda Church v. Menning,* 72 Wis. 2d 8, 12–13, 239 N.W.2d 528 (1976), was whether the statute barred the testimony of the spouse of a witness who was incompetent to testify under the statute, and the court concluded it did not, because the spouse's interest, dependent upon the laws of

Neugart contends, and therefore she may not testify. Again, Neugart overlooks the significance of the fact that an opposite party wishes to call her adversely, and no opposite party is objecting to her testifying. There is no question that Neugart has an interest in the bank accounts such that, if either the estate or Jameson objected in proper form to Neugart's testimony of her communication with Christopherson concerning these accounts, she would be barred from testifying.[15]

¶ 23. We conclude that the circuit court erred in prohibiting Jameson from calling Neugart adversely to examine her on communications and transactions with Christopherson concerning the joint accounts. For the same reasons, WIS. STAT. § 885.16 is not a basis for prohibiting the use of Neugart's deposition at trial.

¶ 24. We recognize the circuit court did not exclude Neugart's deposition because of WIS. STAT. § 885.16, but apparently relied on WIS. STAT. § 804.07(1). However, we conclude the court's application of § 804.07(1) was also in error. Neugart, individually, is a party to the formal proceeding on the issue of the bank accounts, and Jameson is an adverse party in that proceeding. Therefore, under § 804.07(1)(b), Jameson may use Neugart's deposition "for any purpose." Neugart's argument that this does not apply because she is not an "officer, director or managing agent . . . of a . . . corporation" overlooks the plain language of that subsection. This subsection ap-

intestacy and election, was too remote and uncertain. The resolution of this issue has no bearing on this case.

[15] Neugart also cites *Hounsell v. Department of Taxation*, 252 Wis. 138, 31 N.W.2d 203 (1948), and *Schimpf v. Gerald, Inc.*, 52 F. Supp. 2d 976, 987 (E.D. Wis. 1999), in support of her position, but in both cases the person invoking the statute is not the witness whose testimony is at issue.

plies either to the deposition of a "party *or*" (emphasis added) to persons having certain relationships to an entity that is a party. Since Neugart belongs to the former category, she need not belong to the latter.[16]

¶ 25. Neugart does not argue that, if the court erred in prohibiting her from testifying and in excluding her deposition, the errors were harmless; and we conclude they were not. Neugart's deposition testimony supports Jameson's position that Christopherson intended only that Neugart be able to handle her accounts while she was alive. Since Neugart prevailed because there was no evidence to overcome the statutory presumption, there is a reasonable probability that the outcome would have been different had the court heard Neugart's deposition testimony, or had Neugart testified consistent with that testimony at the hearing. *See* WIS. STAT. § 805.18(2); *Nowatske v. Osterloh*, 201 Wis. 2d 497, 506–07, 549 N.W.2d 256 (Ct. App. 1996) (evidentiary error requires reversal only if result, within reasonable probabilities, might have been more favorable to the complaining party had the error not occurred).

*Failure to Remove Neugart as Personal Representative*

¶ 26. Jameson argues that Neugart should have ceased acting as the personal representative of the estate in August 1999 when she filed the request for formal proceedings on the issue of the bank accounts, and there was no reasonable explanation for her failing

---

[16] Of course, even if Neugart were not a party, her deposition may be used for impeaching or contradicting her testimony at the hearing. WIS. STAT. § 804.07(1)(a).

to acknowledge that conflict of interest until December 1, 2000, when she requested a special administrator. The circuit court, according to Jameson, erroneously exercised its discretion in not removing Neugart as personal representative because of this conflict.[17] As a result, Jameson contends, she had to hire counsel to advance the interest of the estate in asserting ownership of the bank accounts. Jameson asserts she is entitled to an order from this circuit court removing Neugart as personal representative "nunc pro tunc" August 1999.

¶ 27. Neugart, as personal representative for the estate, responds that the court did not erroneously exercise its discretion in failing to remove her as personal representative, but that, even if the court did, its error was harmless.

¶ 28. WISCONSIN STAT. § 857.15 provides:

> **When personal representative removed, resigns.** The judge may accept the written resignation of any personal representative. When a personal representative becomes incompetent, disqualified, unsuitable, incapable of discharging the personal representative's duties or is a nonresident of this state who has not appointed a resident agent to accept service of process in all actions or proceedings with respect to the estate and caused such appointment to be filed with the court, the court shall remove the personal representative. When any personal representative has failed to perform any duty imposed by law or by any lawful order of the court or has ceased to be a resident

---

[17] Jameson does not develop an argument that any of the other reasons for removing Neugart as personal representative that she presented at the July 10, 2001 hearing warranted removal, and we therefore do not address them.

of the state, the court may remove the personal representative. When grounds for removal appear to exist, the court on its own motion or on the petition of any person interested shall order the personal representative to appear and show cause why the personal representative should not be removed.

Whether to remove a personal representative for these statutory reasons is a matter within the court's discretion. *Holzhauer v. Zartner*, 183 Wis. 506, 515, 198 N.W. 363 (1924).

¶ 29. We agree with Jameson that Neugart's conflict of interest between her personal interest in ownership of the bank accounts and her interest as personal representative in securing all property potentially belonging to Christopherson for the estate was apparent from at least August 1999. Neugart, as personal representative, presumably recognized this, because at that time she filed the request for formal proceedings on this issue. While it may have been preferable for the court to remove her as personal representative, at least pending a resolution of the issue of the ownership of the joint accounts, Jameson has not persuaded us that the court's failure to do so was an erroneous exercise of discretion.[18]

¶ 30. First, the demand for formal proceedings that Neugart, as personal representative, filed in August 1999 specifically provided that the filing of that document "suspends the powers of the personal repre-

[18] Jameson asserts that she first "moved" the court to schedule a hearing on the removal of Neugart as personal representative on March 3, 2000. However, the first motion in the record we see mentioning Neugart's removal as personal representative was the motion for stay filed on April 28, 2000. Jameson's filing of a separate action needlessly complicated matters.

sentative as to these matters until reinstated by the court." *See* WIS. STAT. § 865.03(2). When the court declined to remove her as personal representative in response to Jameson's April 28, 2000 motion for stay, the court reasoned that the accounts were in the custody of the bank, so there was no need to act to protect them while the issue of their ownership was being resolved. This reasoning is supported by the record: there is no evidence that the accounts were in any way jeopardized by Neugart continuing to act as personal representative.

¶ 31. Second, at the April 2001 hearing on the personal representative's motion for a special administrator, Jameson's counsel did not object to Attorney Pollex's suggestion that a special administrator was necessary only for the limited purpose of representing the estate's interests with respect to the bank accounts. This suggestion appears inconsistent with the motion and with Attorney Pollex's argument, both of which seemed to assert that the special administrator should take over all duties of the personal representative pending resolution of this dispute. One may question why the appointment of a special administrator relating only to the issue of the bank accounts was the proper response to Neugart's motion raising her conflict: the accounts remained in the custody of the bank and Jameson was already advancing the interest of the estate in challenging Neugart's ownership of the accounts. However, since Jameson's counsel did not object, we will not now consider an argument that the court acted unreasonably at that point in allowing Neugart to continue as personal representative on other matters until the issue of the bank accounts was resolved.

¶ 32. Third, Jameson has not demonstrated that Neugart's handling of other property of the estate was remiss in any way. Although Jameson presented other grounds for removal at the July 2001 hearing—relating to the sale of real estate and some items of personal property—the court determined they presented no basis for removal, and Jameson does not develop an argument challenging that decision. As of that hearing, nothing remained to be done on behalf of the estate except paying attorney fees according to the court's rulings and preparing the final accounting. Therefore, at that point in time, even had the court ruled against Neugart on the matter of the bank accounts, it is not apparent what purpose would have been served by removing Neugart as personal representative.

¶ 33. Finally, with respect to Jameson's contention that she had to incur attorney fees that the estate would have incurred had Neugart not been acting as personal representative, WIS. STAT. § 879.63 provides that persons seeking to collect property for the estate, when the personal representative is not acting to do so, are entitled to attorney fees if they are successful.[19] If

---

[19] WISCONSIN STAT. § 879.63 provides:

**Action by person interested to secure property for estate.** Whenever there is reason to believe that the estate of a decedent as set forth in the inventory does not include property which should be included in the estate, and the personal representative has failed to secure the property or to bring an action to secure the property, any person interested may, on behalf of the estate, bring an action in the court in which the estate is being administered to reach the property and make it a part of the estate. If the action is successful, the person interested shall be reimbursed from the estate for the reasonable expenses and attorney fee incurred by the person in the action as approved by the court but not in excess of the value of the property secured for the estate.

Jameson is successful on remand in proving the bank accounts belong to the estate, she will be entitled to reasonable attorney fees under that statute. The court's decision in allowing Neugart to act as personal representative pending resolution of that issue did not and does not affect Jameson's ability to prevail on that issue.

*Attorney Pollex's Fees*

¶ 34. Jameson contends the court erred in ruling that the estate should pay Attorney Pollex's attorney fees, because, he asserts, Attorney Pollex acted at times on behalf of Neugart's interests as an individual, which were adverse to the interests of the estate. Neugart, as personal representative, responds that the circuit court was not ruling on all the attorney fees she incurred as personal representative, but only the fees for Attorney Pollex's services on the forgery issue and on the issue of her removal as personal representative. As to these fees, she asserts, the circuit court correctly ruled the estate should pay them.

¶ 35. Generally, the expenses and fees for a personal representative are committed to the circuit court's discretion, *see Anderson v. Anderson*, 147 Wis. 2d 83, 93, 432 N.W.2d 923 (Ct. App. 1988), as is the decision of what fees are reasonable for an attorney providing services for an estate under WIS. STAT. § 851.40, *see id.* at 93–94. However, whether a statute either requires or authorizes payment of a certain category of expenses or fees is a question of law, which we review de novo. *See Estate of Burgess v. Peterson*, 214 Wis. 2d 180, 189–90, 571 N.W.2d 432 (Ct. App. 1997).

¶ 36. We agree with Neugart, as personal representative, that the court's ruling on Attorney Pollex's fees did not address fees for all services he performed for the estate, because the order referred to his fees "in this matter." We also agree with both parties that the court did intend to rule that Attorney Pollex's fees in representing Neugart on the motion to remove her as personal representative should be paid by the estate. We conclude the court correctly decided that these attorney fees should be paid by the estate.

¶ 37. WISCONSIN STAT. § 857.05 provides that the "personal representative shall be allowed all necessary expenses in the care, management and settlement of the estate." With respect to the motion to remove Neugart as the personal representative, the circuit court determined that there was no reason to remove her, and we have held that was not an erroneous exercise of discretion. We conclude that the reasonable attorney fees Neugart incurred in successfully defending herself on the removal motion were "necessary expenses in the care, management and settlement of the estate," because without successfully defending herself, she could not continue to fulfill her duties as personal representative.

¶ 38. With respect to Attorney Pollex's fees for services provided in litigating the forgery issue, we are unable to tell whether the court intended to include these fees in its ruling. However, it is not necessary to remand to allow the court to clarify this, because we conclude that, if the court did intend to order these fees to be paid by the estate, it would be an erroneous exercise of discretion.

¶ 39. It was in the estate's interest to have the bank accounts belong to the estate. We agree with

Neugart, as personal representative, that she was not obligated to take the position on behalf of the estate that the signatures on the cards were forged, if in her judgment there was not a factual basis for that position. However, we do not agree that it was therefore proper for Neugart, in her capacity as personal representative, to attempt to prove that the cards were not forged. We can see no benefit to the estate resulting from a ruling that Christopherson's signatures were on the cards.

¶ 40. Neugart, as personal representative, evidently understood that proving that Christopherson did not intend a true joint ownership of the accounts was not in the estate's interest; she sought to remove herself as personal representative from that controversy, and only her personal attorney, not Attorney Pollex, represented her on that issue. However, as personal representative, she appears to believe that the forgery issue was different. We do not agree: the estate would benefit if Jameson succeeded in proving either that the signatures on the account cards were forged or that Christopherson did not intend true joint accounts.

¶ 41. Neugart, as personal representative, suggests that if Jameson had prevailed on the forgery issue, there would have been grounds to remove her as personal representative for forgery, and therefore she was acting properly to have Attorney Pollex represent the estate on the forgery litigation. We do not understand this reasoning. The court specifically excluded from the forgery hearing the issue of who signed the cards if Christopherson did not. Therefore, even if Jameson had prevailed at that hearing, the matter of Neugart's involvement and its relation to her service as personal representative would need to be resolved at subsequent hearings.

¶ 42. We conclude that attorney fees for Attorney Pollex's services in defending against the claim of forgery were not "necessary expenses [for Neugart] in the care, management and settlement of the estate." WIS. STAT. § 857.05(1). Therefore that statute does not provide a basis for the estate to pay those attorney fees.

¶ 43. For similar reasons, WIS. STAT. § 851.40(1) does not authorize payment of these fees by the estate. Section 851.40(1) provides: "Any attorney performing services for the estate of a deceased person in any proceeding under chs. 851 to 879, including a proceeding for informal administration under ch. 865, shall be entitled to just and reasonable compensation for such services." Attorney Pollex was not performing services for the estate when defending against Jameson's claim of forgery. It was in the estate's interest to let the interested parties—Jameson and Neugart individually—litigate that issue; it was not in the estate's interest to incur additional fees by duplicating attorney services, which, if successful, would not add any property to the estate.

*Attorney Hollenbeck's Fees—Cross-Appeal*

¶ 44. Neugart, individually, contends the circuit court erred in not ordering the estate to pay the attorney fees she incurred individually by retaining Attorney Hollenbeck to represent her on the issue of the bank accounts—both on the forgery issue and on the issue of Christopherson's intent. She contends that under our decision in *Estate of Burgess*, 214 Wis. 2d at 191, 192–93, WIS. STAT. § 857.07[20] entitles personal rep-

---

[20] WISCONSIN STAT. § 857.07 provides:

resentatives to reimbursement for attorney fees reasonably incurred in the performance of their duties. That is a correct statement of the law, but Neugart retained Attorney Hollenbeck to represent her personal interests in the bank accounts. That interest existed whether or not she was personal representative, and, as we have already held in discussing Attorney Pollex's fees, it was not in the estate's interest that she protect her personal interests in the accounts. Therefore, neither § 857.07 nor *Estate of Burgess* provides authority for ordering the estate to pay the fees Neugart incurred by retaining Attorney Hollenbeck to represent her personal interests.

> **Allowances to personal representative for costs.** When costs are allowed against a personal representative in any action or proceeding the same shall be allowed the personal representative in the personal representative's administration account unless it appears that the action or proceeding in which the costs were taxed was prosecuted or resisted without just cause on the personal representative's part; and the court may determine, in rendering the judgment, whether the costs shall be paid out of the estate or by the personal representative. The court may allow as costs the sum paid by a personal representative on any bond or undertaking given by the personal representative in the case.

The court in *Estate of Burgess v. Peterson*, 214 Wis. 2d 180, 192–193, 571 N.W.2d 432 (Ct. App. 1997), held that this statute requires the estate to reimburse a personal representative for fees for attorneys retained by a surety company defending the personal representative in a suit alleging her negligence, where the personal representative was required to involve the surety company in order to settle the estate and the company's involvement was contractually conditioned on the personal representative accepting responsibility of the company's attorney fees.

997

¶ 45. Neugart, individually, also contends the court erroneously exercised its discretion in declining to order the estate to pay her fees under WIS. STAT. § 879.37 since she was the prevailing party.[21] However, since we have reversed the court's ruling on the issue of Christopherson's intent, Neugart is not at this time the prevailing party on that issue. She remains the prevailing party on the forgery issue, which Jameson has not appealed. However, the court's reasoning in ordering that Neugart personally pay Attorney Hollenbeck's fees was apparently that she prevailed in proving that she was the owner by survivorship of the bank accounts, and thus had benefited by realizing $70,000 from the litigation on the accounts. We conclude the better course is to permit the court on remand, after the issue of Christopherson's intent is litigated, to decide at that time if and to what extent Attorney Hollenbeck's fees should be paid for by the estate under § 879.37.

## CONCLUSION

¶ 46. We reverse the court's determination that the bank accounts are true joint accounts and remand for a hearing on the issue of Christopherson's intent, consistent with this decision. We affirm the court's

---

[21] WISCONSIN STAT. § 879.37 provides:

**Attorney fees in contests.** Reasonable attorney fees may be awarded out of the estate to the prevailing party in all appealable contested matters, to an unsuccessful proponent of a will if the unsuccessful proponent is named as an executor therein and propounded the document in good faith, and to the unsuccessful contestant of a will if the unsuccessful contestant is named as an executor in another document propounded by the unsuccessful contestant in good faith as the last will of the decedent.

decision refusing to remove Neugart as personal representative, and its decision that the estate is to pay Attorney Pollex's fees in representing Neugart on that motion. We conclude that Attorney Pollex is not entitled to be paid by the estate for his services on the forgery issue. We also conclude that Neugart, individually, is not entitled to have the estate pay her fees for Attorney Hollenbeck's services under WIS. STAT. § 857.07. We leave for the court's determination on remand, after it decides the issue of Christopherson's intent, whether the estate should pay Attorney Hollenbeck's fees under WIS. STAT. § 879.37.

*By the Court.*—Orders affirmed in part; reversed in part and cause remanded with directions.