COURT OF APPEALS
DECISION
DATED AND FILED

April 28, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP607**

STATE OF WISCONSIN

Cir. Ct. No. **2018PR962**

IN COURT OF APPEALS
DISTRICT I

IN RE THE ESTATE OF ARTHUR HENRY WISTH:

WILLIAM WISTH,

      APPELLANT,

  V.

JEAN GORSKI,

      RESPONDENT.

APPEAL from an order of the circuit court for Milwaukee County: MARSHALL B. MURRAY, Judge. *Reversed and cause remanded with directions.*

Before Brash, P.J., Dugan and Donald, JJ.

¶1      DONALD, J. William Wisth (Wisth) appeals an order of the probate court denying his petition for administration of the estate of his father, Arthur Wisth (Arthur). Wisth argues that the probate court erred in refusing to appoint a personal representative because Wisth has a contract claim against Arthur's estate. Specifically, Wisth contends that he and Arthur executed an agreement that transferred certain real property to Wisth upon Arthur's death. Because we conclude that the probate court should have appointed a personal representative to address Wisth's claims, we reverse and remand this matter back to the probate court.

## BACKGROUND

¶2      On March 5, 1999, Arthur and Eleanor Wisth executed the Arthur H. Wisth and Eleanor P. Wisth 1999 Revocable Trust. The trust provided that upon the surviving spouse's death, Arthur and Eleanor's assets were to be distributed primarily among their three children—Jean Gorski, William Wisth, and James Wisth. The trust provided that the assets were to be evenly distributed between the children, except that Wisth's share would be $200,000 "less in value than the shares of his siblings."

¶3      Approximately two months later, on May 19, 1999, Wisth and Arthur allegedly[1] entered into a written agreement whereby Wisth, by his corporation B.W. Properties, Inc., conveyed multiple items of real estate to Arthur's limited liability company, AHW Properties, LLC, because Wisth was experiencing personal financial difficulties and was unable to pay the mortgages

---

[1] The Respondent raises concerns about the validity of the agreement. Whether the agreement is valid is irrelevant to the question on appeal.

on the properties. According to the agreement, Arthur would bring the properties current on their mortgages and return the properties to Wisth upon his death.

¶4 In April 2008, Arthur and Eleanor jointly executed an amendment to the 1999 Revocable Trust. The amendment expressly cut Wisth out of the estate plan and divided Arthur and Eleanor's estate between two children—Jean Gorski and James Wisth. The amendment specifically stated that Arthur and Eleanor "make no provision for our son, William A. Wisth, or for any of his issue." No other amendments were made to the trust.

¶5 Eleanor passed away on May 2, 2017. Arthur passed away on April 29, 2018. Prior to Arthur's death, James Wisth also passed away, leaving Gorski as the sole beneficiary pursuant to the trust amendment.

¶6 On June 7, 2018, James Mulligan filed the action underlying this appeal. Mulligan petitioned for the appointment of a special administrator for the sole purpose of accepting service on behalf of the estate in a foreclosure action in which the estate was a named party.[2] A few weeks later, Wisth filed a letter with the circuit court requesting to be added to the action as an interested party based on the agreement between Wisth and Arthur. The letter stated that four specific properties in the estate were affected by the agreement. Wisth also filed the agreement between himself and Arthur with his letter to the circuit court.

¶7 On September 7, 2018, Wisth petitioned the probate court for a formal administration. The petition requested that the probate court appoint a

---

[2] The foreclosure action was commenced in Milwaukee County against Mary Jones. Arthur was determined to be a necessary party to the foreclosure action because he held a prior small claims judgment against Jones.

personal representative and that the personal representative be directed to deed the four properties at issue from Arthur's estate to Wisth. The probate court issued an order setting a date and time for a hearing on the petition. The order was subsequently published. Consequently, Gorski became aware of Wisth's action and objected to his petition. Gorski's objection was based on the terms of the 2008 trust amendment, which specifically removed Wisth as a beneficiary of any portion of Arthur and Eleanor's estate.

¶8      At the hearing on Wisth's petition, the probate court asked Wisth whether his petition constituted a challenge to Arthur's will. Wisth, through counsel, told the probate court that he was not challenging the will, but rather was raising a contract claim based on the agreement between Wisth and Arthur. The probate court denied Wisth's petition, stating that the 2008 trust amendment reflected Arthur and Eleanor's final wishes, which included their intention to disinherit Wisth. The probate court stated:

> Assume that there was an agreement, I believe that the codicil in the trust changed [Arthur's] intent and his wife's intent as to what they wanted to do for their son.
>
> If [Arthur and Eleanor] had wanted to give money to their son for the benefit of the properties they received, they could have done that but they chose not to do that and it was well after the alleged agreement. It's the last voice. The last thing they said. And I wish it weren't so because I don't like to see these family disputes but it's clear the clear intent of [Arthur and Eleanor] was that their son not take and that I believe is the answer to the question.
>
> ….
>
> [The amendment] changed as of what they wanted. The property went to his father. Once the property went to his father, it became marital property. It required really both signatures of the mother and father to transfer—any agreement—and that's another issue but that didn't happen except after the agreement they both said, you know what, we don't want our son to get anything.

> I don't know why and I don't need to know the reason why. If there was an agreement, I accept that fact, there was an agreement and the agreement was broken or nullified by what they did in their trust. That was their last voice and that's what I'm going to abide by so I'm granting the petition—I'm denying the petition for formal administration.

This appeal follows.

## DISCUSSION

¶9 The construction of a testamentary document presents a question of law. *See **Holy Family Convent v. DOR***, 157 Wis. 2d 192, 195, 458 N.W.2d 579 (Ct. App. 1990). We review questions of law independently without deference to the decision of the circuit court. *See **Scheunemann v. City of West Bend***, 179 Wis. 2d 469, 475, 507 N.W.2d 163 (Ct. App. 1993). This case also requires us to make a determination pursuant to WIS. STAT. § 856.07 (2017-18),[3] which also presents a question of law that we review *de novo*. *See **Bell v. Neugart***, 2002 WI App 180, ¶15, 256 Wis. 2d 969, 650 N.W.2d 52.

¶10 At issue in this appeal is whether the probate court erred in denying Wisth's petition for special administration pursuant to WIS. STAT. § 856.07. Wisth contends that because he had a cause of action against the estate sounding in contract, the appointment of a personal representative was necessary to address his claim. We agree.[4]

---

[3] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[4] We emphasize that we do not address the validity of the alleged agreement between Wisth and Arthur, nor do we address the validity of Wisth's claim against Arthur's estate. We decide this appeal on the very narrow issue before us, which is whether the probate court should have appointed a personal representative in the matter.

¶11    WISCONSIN STAT. § 856.07 states:

(1) GENERALLY.  Petition for administration of the estate of a decedent may be made by any person named in the will to act as personal representative or by any person interested.

(2) AFTER 30 DAYS.  If none of those named in sub. (1) has petitioned within 30 days after the death of the decedent, petition for administration may be made by any person who was guardian of the decedent at the time of the decedent's death, any creditor of the decedent, *anyone who has a cause of action or who has a right of appeal which cannot be maintained without the appointment of a personal representative or anyone who has an interest in property which is or may be a part of the estate.*

(Emphasis added.)   As relevant to this case, the statute provides that any party having a cause of action against an estate, or an interest in property that may be a part of an estate, may petition the probate court for the appointment of a personal representative to address the party's concerns.  Applying the statute to the facts of this case, we conclude that Wisth's petition clearly establishes the need for a personal representative.

¶12    Case law supports our conclusion.  The Wisconsin Supreme Court's decision in ***Darwin v. West***, 246 Wis. 199, 16 N.W.2d 806 (1944), is instructive with regard to what procedure a probate court must follow when determining whether a contract external to a will affects an estate.  In *West*, Mary West resided with her daughter, Fannie G. Darwin, from 1929 until 1933.  ***Id.*** at 200.  In 1930, while West still resided with her daughter, she purchased a home in Minnesota and placed the title to the home in Darwin's name.  ***Id.***   West paid for numerous improvements to the property, many of which were made by West's husband.  ***Id.*** In September 1931, West made a will, naming Darwin as the executor and giving Darwin one-sixth of the residuary estate, which was an equal share with her siblings.  ***Id.***  Two years later, in September 1933, West asked Darwin to deed the

Minnesota property to West and assured Darwin that changes had not been, and would not be, made to West's will. *Id.* at 200-01. Darwin deeded the property back to West. *Id.* at 201.

¶13 In November 1942, however, West made a new will, which made no provisions for Darwin. *Id.* West passed away the following year, at which point Darwin discovered that her mother created a new will. *Id.* Darwin filed a claim against the estate alleging a breach of the agreement made in September 1933, in which Darwin agreed to deed the Minnesota home to West after West assured Darwin that no changes had been, or would be, made to West's will. *Id.* Darwin sought damages in the amount of one-sixth the value of West's estate, or alternatively, the reasonable value of the Minnesota home on the date Darwin deeded it to West. *Id.* Darwin also sought compensation for services rendered while Darwin and West lived together. *Id.*

¶14 The circuit court held a hearing to determine whether the evidence established an oral contract between West and Darwin to devise or bequeath property for a valid consideration. *Id.* at 203. The circuit court ultimately found that evidence did not support a finding of an oral contract between Darwin and West and our supreme court upheld that determination. *Id.*

¶15 Although the circuit court in *West* did not find the existence of an oral contract, the case is nonetheless instructive in this matter because it describes the procedural process the circuit court followed to inquire about whether Darwin had a legitimate claim against her mother's estate. The probate court in this matter did not make such an inquiry. Rather, the probate court denied Wisth's petition for a personal representative to address the contract claim, interpreting Wisth's petition as a challenge to the will rather than as a claim against the estate. The

probate court based its decision on what it perceived to be Arthur's final intent. The record establishes, however, that Wisth did not dispute Arthur's intention to disinherit Wisth as reflected in the 2008 trust amendment. Rather, Wisth claimed to have a cause of action against the estate based on the contradiction between the terms of the contract he allegedly executed with Arthur and the 2008 trust amendment. Rather than inquire about Wisth's claim, as the court did in *West*, the probate court concluded that regardless of whether a valid contract between Wisth and Arthur existed, Arthur's intentions as expressed in the 2008 trust amendment took priority over any alleged contract. We conclude that under the language of WIS. STAT. § 856.07(2), however, Wisth was entitled to the appointment of a personal representative so that Wisth's breach of contract claim can be appropriately addressed.

¶16 The Respondent raises numerous arguments that focus primarily on the merits of Wisth's contract claim rather than the issue on appeal, which is whether the probate court should have appointed a personal representative to address Wisth's cause of action.

¶17 For the foregoing reasons, we reverse and remand this matter for further proceedings consistent with this decision.

> *By the Court.*—Order reversed and cause remanded with directions.

> Not recommended for publication in the official reports.