AON RISK SERVICES, INC., of Wisconsin, a Wisconsin
corporation, and Aon Risk Services, Inc., of
Maryland, a foreign corporation,
Plaintiffs-Appellants-Cross-Respondents,

v.

James A. LIEBENSTEIN and David Pautz,
Defendants-Cross-Appellants,

PALMER & CAY OF WISCONSIN, LLC, a Wisconsin
limited liability company, and Palmer & Cay
Holdings, Inc. a foreign corporation,
Defendants-Respondents-Cross-Appellants.
[Case No. 2004AP2163.]

AON RISK SERVICES, INC., of Wisconsin, a Wisconsin
corporation, and Aon Risk Services, Inc., of
Maryland, a foreign corporation,
Plaintiffs-Appellants-Cross-Respondents,

v.

PALMER & CAY, INC., a foreign corporation,
Defendant-Respondent-Cross-Appellant.
[Case No. 2004AP2164.]

Court of Appeals

*Nos. 2004AP2163, 2004AP2164. Oral argument
December 6, 2005.—Decided December 28, 2005.*

2006 WI App 4

127

(Also reported in 710 N.W.2d 175.)

On behalf of the plaintiffs-appellants-cross-respondents, the cause was submitted on the briefs of *David M. Lucey* of *Foley & Lardner, LLP*, of Milwaukee. Oral Argument by *David M. Lucey*.

On behalf of the defendants-respondents-cross-appellants and defendants-cross-appellants, the cause was submitted on the briefs of *Jane C. Schlicht* of *Cook & Franke, S.C.*, of Milwaukee.

Oral argument by *Jane C. Schlicht*.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. FINE, J. Aon Risk Services, Inc., of Wisconsin, and its parent, Aon Risk Services, Inc., of Maryland, in appeal number 2004AP**2163** (Milwaukee County Circuit Court case number 2002–CV-932), appeal the trial court's grant of summary judgment dismissing their claims against Palmer & Cay of Wisconsin, LLC, and Palmer & Cay Holdings, Inc., and also appeal the trial court's denial of leave for the Aon companies to further amend their complaint.[1] James A. Liebenstein, David Pautz, and Palmer & Cay cross-appeal, pursuant to our leave, the trial court's rulings in

---

[1] For the purposes of this appeal, the relationships between the Aon companies, on the one hand, and between the Palmer & Cay companies, on the other hand, are immaterial, except as noted in connection with appeal number 2004AP2164 below. Accordingly, we refer to each set of company defendants by their common name. Except as Aon's claims against Liebenstein and

connection with the enforceability of non-compete agreements Liebenstein and Pautz signed with predecessors of Aon. We affirm and reverse, as summarized in Part I.C. of this opinion.

¶ 2. Aon also appeals, in appeal number 2004AP2164 (Milwaukee County Circuit Court case number 2003–CV-10621), the trial court's order granting summary judgment dismissing Aon's claims against Palmer & Cay, Inc. (the parent of Palmer & Cay of Wisconsin, LLC, and Palmer & Cay Holdings, Inc.) asserted in that action. Palmer & Cay, Inc., was not named as a party in appeal number -2163. Palmer & Cay, Inc., cross-appeals in appeal number -2164 from the trial court's order denying its request for frivolous-action costs and attorney fees under WIS. STAT. § 814.025 (2003–04). We affirm and reverse, as summarized in Part II.B. of this opinion.

¶ 3. These appeals were consolidated by our order.

---

Pautz are material to Aon's claims against Palmer & Cay, these appeals do not concern the liability to Aon, if any, of Liebenstein and Pautz.

Palmer & Cay contends in its response brief in appeal number -2163 that Aon has not appealed the trial court's order "dismissing the accounting claim," Count One of Aon's amended complaint, against Palmer & Cay. That is not true. The trial court dismissed that claim on June 30, 2004. An amended notice of appeal filed by Aon on August 13, 2004, specifically states that it is appealing from that order. Further, under WIS. STAT. § 808.04(8) a notice of appeal encompasses subsequently entered orders or judgments. That subsection reads: "If the record discloses that the judgment or order appealed from was entered after the notice of appeal was filed, the notice of appeal shall be treated as filed after such entry and on the day thereof."

## A.

¶ 4. Aon and Palmer & Cay sell and service commercial-property and casualty insurance for businesses. According to Aon's amended complaint, Palmer & Cay entered the Milwaukee market in November of 2001, and is Aon's "direct competitor." James A. Liebenstein worked for Aon as a senior vice president in Aon's Milwaukee office until he resigned in November of 2001 to, as phrased by Aon's amended complaint, "start a Milwaukee office for Palmer & Cay." David Pautz worked as an "account executive" in Aon's Milwaukee office until he, again according to the amended complaint, joined "Liebenstein in starting Palmer & Cay's new Milwaukee office."

¶ 5. Aon sued Liebenstein and Pautz, claiming that they each breached both their contractual and common-law duties of loyalty to Aon. Aon also sued Palmer & Cay for helping Liebenstein and Pautz breach those duties and also for tortuously interfering with Aon's relationships with Aon's customers. Aon's amended complaint in appeal number -2163 asserted the following claims:

Count One: An accounting from Palmer & Cay and Liebenstein and Pautz for their alleged misappropriation of Aon's "confidential information" and solicitation of Aon's customers, all of which was alleged to violate Liebenstein's and Pautz's employment agreements with Aon.

Count Two: An injunction against Liebenstein and Pautz enforcing their non-compete agreements with Aon, and preventing their use of Aon's "confidential business information."

Count Three: Against Liebenstein and Pautz for damages Aon asserted it sustained as a result of Liebenstein's and Pautz's alleged breach of their contracts with Aon.

Count Four: Against Palmer & Cay and Liebenstein and Pautz as employees of Palmer & Cay seeking Aon's damages arising from the defendants' alleged tortious interference with Aon's relationship with Aon's customers.

Count Five: Against Liebenstein and Pautz alleging that they breached their agency and loyalty duties to Aon.

Count Six: Against Palmer & Cay for helping Liebenstein and Pautz breach their "agency and other duties to Aon."

Count Seven: Against all of the defendants, a claim for punitive damages.

As sources of Liebenstein's and Pautz's contractual duties of loyalty to Aon, Aon's amended complaint pointed to agreements executed by Liebenstein and Pautz when they were employees of an Aon predecessor, promising, in essence to: (1) not disclose to competitors confidential information; (2) not solicit their employer's customers for a competing business, either while they worked for Aon's predecessor or for two years thereafter; and (3) use their best efforts to advance the predecessor company's business while they worked for it. We address in turn each of Aon's claims against Palmer & Cay in light of the cross-appeal by Liebenstein, Pautz, and Palmer & Cay, which we discuss in its appropriate slot in Part I.B.1. below.

142

B.

■■■
¶ 6. We review *de novo* a trial court's grant of summary judgment. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315–317, 401 N.W.2d 816, 820–821 (1987). In assessing whether summary judgment is appropriate, we first determine whether the complaint states a claim, and, if so, whether there are any genuine issues of material fact for trial. *Preloznik v. City of Madison,* 113 Wis. 2d 112, 116, 334 N.W.2d 580, 582–583 (Ct. App. 1983). In evaluating the complaint, we determine whether, looking at the facts alleged in a light most favorable to the plaintiff, those facts state claims for relief. *See Doe v. Archdiocese of Milwaukee,* 2005 WI 123, ¶ 19, 284 Wis. 2d 307, 321, 700 N.W.2d 180, 186–187. Although we accept " 'the facts pled as true,' " a complaint's legal conclusions are analyzed *de novo,* both by the trial court initially, and by us on our *de novo* review. *Ibid.* (quoted source omitted). Stated another way, mere conclusory assertions that echo legal or statutory standards are insufficient; a complaint's assertions must "allege the ultimate facts" that support the plaintiff's claims. *ECT Int'l, Inc. v. Zwerlein,* 228 Wis. 2d 343, 349, 597 N.W.2d 479, 482 (Ct. App. 1999) (trade-secret protection under Wis. Stat. § 134.90).

■■■
¶ 7. In order to survive summary judgment, the party with the burden of proof on an element in the case must establish that there is at least a genuine issue of fact on that element by submitting evidentiary material "set[ting] forth specific facts," Wis. Stat. Rule 802.08(3), pertinent to that element, *Transportation Ins. Co. v. Hunzinger Constr. Co.,* 179 Wis. 2d 281, 290–292, 507 N.W.2d 136, 139–140 (Ct. App. 1993); *Estate of Ander-*

*son v. Anderson,* 147 Wis. 2d 83, 88, 432 N.W.2d 923, 926 (Ct. App. 1988) (party asserting affirmative of a proposition has the burden of proof); *see also Schaffer ex rel. Schaffer v. Weast,* 126 S. Ct. 528, 534 (2005) (" 'Perhaps the broadest and most accepted idea is that the person who seeks court action should justify the request, which means that the plaintiffs bear the burdens on the elements in their claims.' ") (quoted source omitted). As with the assessment of whether a complaint states a claim, mere conclusory assertions are not enough. Thus, summary judgment is not appropriate if both the complaint states a claim and there are genuine issues for trial. RULE 802.08(2). We analyze Aon's amended complaint and the parties' summary-judgment material against this background.

1. *Palmer & Cay's Liability for the Disclosure of Claimed Confidential Aon Information by Liebenstein and Pautz.*

¶ 8. As we have seen, Count One asserts claims against Palmer & Cay based on two things Aon contends Liebenstein and Pautz did: (1) their alleged misappropriation of confidential Aon customer-list information, and (2) their alleged violation of their noncompete agreements. We look at each aspect of Count One in turn.

¶ 9. The ability in Wisconsin to assert a claim based on the alleged misappropriation of confidential information is circumscribed by WIS. STAT. § 134.90, Wisconsin's enactment of the Uniform Trade Secrets Act.[2] First, the Act provides remedies for the misappropriation of "trade secrets," which, as material here,

---

[2] WISCONSIN STAT. § 134.90 reads:

must be "information [that] derives [its] independent economic value, actual or potential, from not being

**(1)** DEFINITIONS. In this section:

(a) "Improper means" includes espionage, theft, bribery, misrepresentation and breach or inducement of a breach of duty to maintain secrecy.

(b) "Readily ascertainable" information does not include information accessible through a license agreement or by an employee under a confidentiality agreement with his or her employer.

(c) "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique or process to which all of the following apply:

1. The information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

2. The information is the subject of efforts to maintain its secrecy that are reasonable under the circumstances.

**(2)** MISAPPROPRIATION. No person, including the state, may misappropriate or threaten to misappropriate a trade secret by doing any of the following:

(a) Acquiring the trade secret of another by means which the person knows or has reason to know constitute improper means.

(b) Disclosing or using without express or implied consent a trade secret of another if the person did any of the following:

1. Used improper means to acquire knowledge of the trade secret.

2. At the time of disclosure or use, knew or had reason to know that he or she obtained knowledge of the trade secret through any of the following means:

a. Deriving it from or through a person who utilized improper means to acquire it.

b. Acquiring it under circumstances giving rise to a duty to maintain its secrecy or limit its use.

c. Deriving it from or through a person who owed a duty to

generally known to, and not being readily ascertainable by proper means by, other persons who can obtain

the person seeking relief to maintain its secrecy or limit its use.

d. Acquiring it by accident or mistake.

**(3)** INJUNCTIVE RELIEF. (a) 1. A court may grant an injunction against a person who violates sub. (2). Chapter 813 governs any temporary or interlocutory injunction or ex parte restraining order in an action under this section, except that no court may issue such an injunction or restraining order unless the complainant makes an application which includes a description of each alleged trade secret in sufficient detail to inform the party to be enjoined or restrained of the nature of the complaint against that party or, if the court so orders, includes written disclosure of the trade secret. The complainant shall serve this application upon the party to be enjoined or restrained at the time the motion for the injunction is made or the restraining order is served, whichever is earlier.

2. Except as provided in subd. 3., upon application to the court, the court shall terminate an injunction when a trade secret ceases to exist.

3. The court may continue an injunction for a reasonable period of time to eliminate commercial advantage which the person who violated sub. (2) otherwise would derive from the violation.

(b) In exceptional circumstances, an injunction granted under par. (a) may condition future use of a trade secret by the person who violated sub. (2) upon payment of a reasonable royalty by that person to the owner of the trade secret for no longer than the period of time for which the court may enjoin or restrain the use of the trade secret under par. (a). Exceptional circumstances include a material and prejudicial change of position, prior to acquiring knowledge or reason to know of a violation of sub. (2), that renders an injunction inequitable.

(c) In appropriate circumstances, the court may order affirmative acts to protect a trade secret.

**(4)** DAMAGES. (a) Except to the extent that a material and prejudicial change of position prior to acquiring knowledge or reason to know of a violation of sub. (2) renders a monetary recovery inequitable, a court may award damages to the complain-

economic value from its disclosure or use." Sec. 134.90(1)(c)1. This requires that the information for which trade-secret protection is sought be "available from only one source"—the party seeking trade-secret

ant for a violation of sub. (2). A court may award damages in addition to, or in lieu of, injunctive relief under sub. (3). Damages may include both the actual loss caused by the violation and unjust enrichment caused by the violation that is not taken into account in computing actual loss. Damages may be measured exclusively by the imposition of liability for a reasonable royalty for a violation of sub. (2) if the complainant cannot by any other method of measurement prove an amount of damages which exceeds the reasonable royalty.

(b) If a violation of sub. (2) is willful and malicious, the court may award punitive damages in an amount not exceeding twice any award under par. (a).

(c) If a claim that sub. (2) has been violated is made in bad faith, a motion to terminate an injunction is made or resisted in bad faith, or a violation of sub. (2) is willful and deliberate, the court may award reasonable attorney fees to the prevailing party.

(5) PRESERVATION OF SECRECY. In an action under this section, a court shall preserve the secrecy of an alleged trade secret by reasonable means, which may include granting a protective order in a discovery proceeding, holding an in-camera hearing, sealing the record of the action and ordering any person involved in the action not to disclose an alleged trade secret without prior court approval.

(6) EFFECT ON OTHER LAWS. (a) Except as provided in par. (b), this section displaces conflicting tort law, restitutionary law and any other law of this state providing a civil remedy for misappropriation of a trade secret.

(b) This section does not affect any of the following:

1. Any contractual remedy, whether or not based upon misappropriation of a trade secret.

2. Any civil remedy not based upon misappropriation of a trade secret.

3. Any criminal remedy, whether or not based upon misappropriation of a trade secret.

147

protection. *ECT Int'l*, 228 Wis. 2d at 349, 597 N.W.2d at 482. Further, the party seeking trade-secret protection for information must specify how and why the information qualifies; that is, the party must show the unique characteristics of that information that make it worthy of protection. *See id.*, 228 Wis. 2d at 350–351, 597 N.W.2d at 482–483. Generally, customer lists are not trade secrets under the Act because potential customers of most businesses are readily ascertainable from public records and sources. *See Burbank Grease Servs., LLC v. Sokolowski*, 2005 WI App 28, ¶¶ 9, 14–18, 278 Wis. 2d 698, 706, 709–712, 693 N.W.2d 89, 93, 94–96, *review granted*, 2005 WI 134, 282 Wis. 2d 719, 700 N.W.2d 271 (WI May 1, 2005) (No. 2004AP468).[3]

¶ 10. Second, the Act "displaces conflicting tort law, restitutionary law and any other law of this state providing a civil remedy for misappropriation of a trade secret," unless the claimant seeks enforcement of either a "contractual remedy, whether or not based upon misappropriation of a trade secret," or a "civil remedy not based upon misappropriation of a trade secret." WIS. STAT. § 134.90(6). This pre-empts all common-law claims based on the alleged misappropriation of information, irrespective of whether that information qualifies as a "trade secret" under the Act. *Burbank Grease*, 2005 WI App 28, ¶¶ 29–37, 278 Wis. 2d at 717–724, 693 N.W.2d at 98–102. Thus, we must first determine whether Aon has passed summary-judgment muster

---

**(7)** UNIFORMITY OF APPLICATION AND CONSTRUCTION. This section shall be applied and construed to make uniform the law relating to misappropriation of trade secrets among states enacting substantially identical laws.

[3] *See* footnote four, below.

148

showing that Palmer & Cay may be responsible for Liebenstein's and Pautz's alleged disclosure to it of purported confidential Aon information, and this requires an initial inquiry whether the information is a "trade secret" under § 134.90. If it is, then the procedures of the Act govern; if it is not, pre-emption bars the claims Aon makes in Count One of its amended complaint in appeal number -2163 insofar as the disclosure-of-confidential-information claims rest on common-law, not contractual, duties.

¶ 11. As we have seen, "trade secret" is defined by Wisconsin's Uniform Trade Secrets Act as:

> information, including a formula, pattern, compilation, program, device, method, technique or process to which all of the following apply:
>
> 1. The information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> 2. The information is the subject of efforts to maintain its secrecy that are reasonable under the circumstances.

WIS. STAT. § 134.90(1)(c). As we have also seen, this requires that the information for which trade-secret protection is sought must be "available from only one source"—the party claiming that someone has misappropriated that information. *ECT Int'l*, 228 Wis. 2d at 349, 597 N.W.2d at 482. Although in its main and reply briefs in appeal number -2163, Aon points to material in the Record supporting its contention that Liebenstein and Pautz disclosed to Palmer & Cay customer

lists of Aon, it has not developed any argument as to how or why that information is within the Act's definition of "trade secret." Accordingly, we take that as a concession that this information, which Aon's main brief in appeal number -2163 characterizes as "obviously confidential information about Aon's customers and prospective customers," was not a "trade secret" under the Act. *See League of Women Voters v. Madison Cmty. Found.*, 2005 WI App 239, ¶ 19, 288 Wis.2d 128, 140, 707 N.W.2d 285, 291 (appellant "must present developed arguments if it desires this court to address" its contentions).[4]

---

[4] Oddly, Aon's reply brief in appeal number -2163 asks us not to follow *Burbank Grease Servs., LLC v. Sokolowski*, 2005 WI App 28, 278 Wis. 2d 698, 693 N.W.2d 89, even though the law has been clear for at least eight years that we are bound by published decisions of our court unless they are overturned by the Wisconsin Supreme Court. *Cook v. Cook*, 208 Wis. 2d 166, 189–190, 560 N.W.2d 246, 256 (1997); *see also* Wis. Stat. § 752.41(2) ("Officially published opinions of the court of appeals shall have statewide precedential effect."). The supreme court heard oral argument in *Burbank Grease* on December 2, 2005. According to the supreme court's "Table of Pending Cases," the court will consider the following issues:

> Does Wis. Stat. § 134.90(6) preempt the common law cause of action for breach of fiduciary duty?

> Does the disclosure of confidential, proprietary computer data constitute a disclosure of "restricted access information" within the meaning of Wis. Stat. § 943.70(2) (a) 6?

As noted, we are remanding appeal number -2163 for further proceedings. On remand, the trial court shall determine whether the supreme court's decision in *Burbank Grease* affects the parties' rights and remedies in this case, and, if appropriate, give the parties additional discovery and an opportunity to seek summary judgment in connection with whatever impact the supreme court decision may have.

¶ 12. WISCONSIN STAT. § 134.90(6)(b)1 does not, however, pre-empt "[a]ny contractual remedy, whether or not based upon misappropriation of a trade secret." *Cf. Burbank Grease*, 2005 WI App 28, ¶ 3, 278 Wis. 2d at 703, 693 N.W.2d at 91 (employee was "never asked to sign a noncompete agreement"; no indication from decision that employee ever signed an agreement to not disclose his employer's confidential information). Thus, if either Liebenstein's or Pautz's non-compete agreement with an Aon predecessor is both enforceable and prevents either of them from giving confidential Aon information to Palmer & Cay, and they did so with Palmer & Cay's help or connivance, Count One of Aon's amended complaint states a claim. *See St. Francis Sav. & Loan Ass'n v. Hearthside Homes, Inc.*, 65 Wis. 2d 74, 81, 221 N.W.2d 840, 844 (1974) (" 'A person who, without being privileged to do so, intentionally causes or assists an agent to violate a duty to his principal is subject to liability to the principal.' ") (adopting and quoting RESTATEMENT (SECOND) OF AGENCY § 312 (1958)).

¶ 13. When Liebenstein first started to work for Aon's predecessor, he agreed that he would not, "during the term of [his] employment and for two (2) years after termination thereof" disclose his employer's confidential information, which was defined to "include[], but is not limited to policy expiration dates, policy terms, conditions and rates, familiarity with customer's risk characteristics, and information concerning the insurance markets for large and complex commercial risks." Pautz also agreed when he first started to work for Aon's predecessor to not disclose, "during the term of [his] employment and for two (2) years after Termination Date," similarly defined "confidential information."

¶ 14. In their cross-appeal, Liebenstein, Pautz, and Palmer & Cay contend that these agreements are not enforceable and thus the trial court erred in denying their motion for summary judgment seeking dismissal of claims resting on those agreements. We disagree.

¶ 15. Non-compete agreements must satisfy WIS. STAT. § 103.465, which provides:

> A covenant by an assistant, servant or agent not to compete with his or her employer or principal during the term of the employment or agency, or after the termination of that employment or agency, within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal. Any covenant, described in this subsection, imposing an unreasonable restraint is illegal, void and unenforceable even as to any part of the covenant or performance that would be a reasonable restraint.

The defendants contend that the Liebenstein and Pautz agreements with Aon's predecessor are unenforceable because Aon did not enforce similar restraints on other employees, and, also, because the restrictions were not, as phrased by the statute, "reasonably necessary" for Aon's "protection," and are thus "too broad to be enforceable in Wisconsin." (Bolding in quotation from Palmer & Cay's brief omitted.)

> Whether the covenant is reasonably necessary to protect the employer depends on the totality of the circumstances and is a question of law to be resolved on the basis of factual findings. "[T]o enforce a restraint, the employee must present a substantial risk either to the employer's relationships with his customers or with

respect to confidential business information." The employer has the burden of proving the reasonable necessity of the restrictive covenant.

*NBZ, Inc. v. Pilarski*, 185 Wis. 2d 827, 840, 520 N.W.2d 93, 97 (Ct. App. 1994) (quoted source and citations omitted). The Record here does not present us with the requisite "totality of the circumstances" from which to assess the enforceability of the agreements. "Summary judgment is not to be a trial on affidavits and depositions." *Lecus v. American Mut. Ins. Co. of Boston*, 81 Wis. 2d 183, 189, 260 N.W.2d 241, 243 (1977); *see also Envirologix Corp. v. City of Waukesha*, 192 Wis. 2d 277, 296, 531 N.W.2d 357, 366 (Ct. App. 1995) ("Summary judgment should not be granted unless the moving party demonstrates a right to a judgment with such clarity as to leave no room for controversy."). Indeed, the precise scope of duties owed by either Liebenstein or Pautz to Aon requires that the pertinent facts be "fully developed" at a trial. *Bass v. Ambrosius*, 185 Wis. 2d 879, 890, 520 N.W.2d 625, 629 (Ct. App. 1994) (resolution of complex legal issues may require full exposition of facts).[5]

---

[5] The defendants argue that the mere presence of a severability clause in a non-compete agreement makes the entire agreement "null and void." This is how they phrase their argument in their main brief on their cross-appeal in appeal number -2163: "Under Wisconsin law, reasonable and enforceable provisions of a non-compete agreement become null and void if any part of the covenant is unenforceable. WIS. STAT. 103.465." As we have seen, § 103.465 reads, as material: "Any covenant, described in this subsection, imposing an unreasonable restraint is illegal, void and unenforceable even as to any part of the covenant or performance that would be a reasonable restraint." This means that a restrictive employment agreement is void if any of its connected parts are void, irrespective of

¶ 16. Liebenstein, Pautz, and Palmer & Cay also complain that the trial court erroneously truncated their ability to present a factual basis controverting Aon's projected proof in support of its burden under WIS. STAT. § 103.465 when it ruled *in limine* that: (1) the defendants' proof concerning Aon's "practices of requiring employees to sign restrictive covenants" was to "be limited to evidence concerning employees similarly situated to either defendant James Liebenstein or defendant David Pautz who were hired by [Aon's predecessor] within six months before or after Mr. Lieben-

---

whether the contract provides that the offending aspect may be severed from those that are reasonable. *See Streiff v. American Family Mut. Ins. Co.*, 118 Wis. 2d 602, 613, 348 N.W.2d 505, 511 (1984) ("clauses of the covenant are intertwined" because they "govern[] several similar types of activities and establish[] several time and geographical restraints rather than two covenants," and, therefore, it is not necessary to "decide whether a restraint which is reasonable as to activity, duration, and territory is enforceable under sec. 103.465, when the agreement includes a second restraint which is unreasonable as to activity, duration, and territory and is unenforceable under sec. 103.465"). Thus, the mere presence of a severability clause does not doom the entire agreement even though all of its provisions may be reasonable under the statute. Indeed, the very case that the defendants cite, *Nalco Chemical Co. v. Hydro Technologies, Inc.*, 984 F.2d 801, 806 (7th Cir. 1993), makes this clear:

> As a final note, paragraph five [of the employment agreement] contains a savings clause that maintains that the covenant not to compete is applicable with reasonable restrictions if the restrictions as originally stated are found by a court to be unreasonable. This modification practice is called "blue penciling" and is prohibited by section 103.465. *Streiff v. American Family Mutual Insurance Company*, 118 Wis. 2d 602, 613–14, 348 N.W.2d 505 (Wis. 1984). For that reason paragraph five and paragraph three are void and may not be enforced with otherwise reasonable restrictions.

stein or Mr. Pautz was hired," and (2) the defendants' evidence concerning Aon's "practices of enforcing restrictive covenants" was to "be limited to employees whose employment with Aon-Wisconsin terminated within six months before or six months after" Liebenstein and Pautz left Aon "on November 26, 2001." This cuts the loaf too thinly.

¶ 17. Although trial-court rulings on evidence are discretionary, *State v. Pharr*, 115 Wis. 2d 334, 342, 340 N.W.2d 498, 501 (1983), a party's right to present relevant evidence should be respected. Evidence is "relevant" if it has "*any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Wis. Stat. Rule 904.01 (emphasis added). "The criterion of relevancy is whether the evidence sought to be introduced would shed any light on the subject of inquiry." *Rogers v. State*, 93 Wis. 2d 682, 688, 287 N.W.2d 774, 776 (1980). Further, to be relevant, evidence need only shed light on a " 'single link' " in connection with a party's syllogism of proof. *State v. Brewer*, 195 Wis. 2d 295, 309, 536 N.W.2d 406, 412 (Ct. App. 1995) (quoted source omitted). As we have seen, whether non-compete agreements survive Wis. Stat. § 103.465 is a question of law to be decided by the trial court after a full exegesis of the facts. *NBZ*, 185 Wis. 2d at 840, 520 N.W.2d at 97. The weight to be given to those facts in assessing the requisite "totality of the circumstances," as phrased by *NBZ*, will be the trial court's prerogative in reaching its legal conclusion on whether the Liebenstein and Pautz agreements are enforceable. *See ibid.* Accordingly, we reverse the trial court's order *in limine* restricting the scope of the defendants' proof at any trial.

¶ 18. If the trial court determines on remand that the non-compete agreements signed by Liebenstein and Pautz are enforceable, then Aon has submitted sufficient summary-judgment material that indicates that there are fact issues whether either Liebenstein or Pautz, or both, breached those agreements by disclosing to Palmer & Cay confidential Aon customer information, both while they were still working for Aon and within two years after they left Aon. For example, in August of 2001, while he still worked for Aon, Pautz sent to one of his contacts at Palmer & Cay an extensive list of Aon's customers whom he projected, as the heading on the list indicated, were "Likely to Move" to Palmer & Cay once Liebenstein and Pautz did. The cover e-mail told Pautz's Palmer & Cay contact that attached to the e-mail were "various scenarios of how we envision business revenue flowing to Palmer & Cay" from Aon. Pautz testified at his deposition that "*we . . .* forwarded" that information to the Palmer & Cay contact. (Emphasis added.) Further, Liebenstein testified at his deposition that he went to Atlanta while he still worked at Aon and discussed with the Palmer & Cay contact a projected business plan for Palmer & Cay's Milwaukee office once they opened it. In light of Liebenstein's and Pautz's contacts with Palmer & Cay before they left their employment with Aon, there are fact issues whether Palmer & Cay helped them breach their employment agreements in connection with their alleged disclosure of confidential Aon customer information.

2. *Alleged Tortious Interference by Liebenstein and Pautz, as Employees of Palmer & Cay, of Aon's Relationships with its Customers.*

¶ 19. As we have seen, Counts Two and Three of Aon's amended complaint assert claims against Lieben-

156

stein and Pautz only, and this appeal is only from the dismissal of Aon's claims against Palmer & Cay. Accordingly, we turn to Count Four.

¶ 20. Count Four alleged that "Liebenstein and/or Pautz, as Palmer & Cay's employees, have falsely told or suggested to certain of Aon's customers, including Northern Shared Medical, that Aon will be 'getting out of' its relationships with smaller customer accounts, and would pursue business relationships only with large customer accounts." Count Four also alleged that Liebenstein and Pautz "told these customers that Aon would require them to deal with Aon's service center in Glenview, Illinois, and would not allow them to obtain service from Aon's Milwaukee office." Aon claimed that these comments were false, that Liebenstein and Pautz knew the comments were false, and that they were made "in order to encourage Aon's customers to switch their business to Palmer & Cay."

> The elements of tortious interference with a contract are: (1) the plaintiff had a contract or prospective contractual relationship with a third party; (2) the defendant interfered with the relationship; (3) the interference was intentional; (4) a causal connection exists between the interference and the damages; and (5) the defendant was not justified or privileged to interfere.

*Dorr v. Sacred Heart Hosp.*, 228 Wis. 2d 425, 456, 597 N.W.2d 462, 478 (Ct. App. 1999). In connection with part five of this test, truth is a defense. *Liebe v. City Fin. Co.*, 98 Wis. 2d 10, 16–19, 295 N.W.2d 16, 19–21 (Ct. App. 1980).

¶ 21. Palmer & Cay has not argued for summary-judgment purposes that either Liebenstein or Pautz as employees of Palmer & Cay did not make the comments

157

about Aon's business plan to Aon's customers, or that this was not done to persuade Aon customers to switch their business to Palmer & Cay. Rather, Palmer & Cay contends that the comments were either "true" or "substantially true." The trial court determined that based on the internal Aon materials submitted to it by Palmer & Cay, the comments were "a reasonable inference" that could be drawn from Aon's business plan, "even if it's not the one [Aon] would have drawn, or even intended." This ignores, however, an affidavit submitted by Aon executed by Philip Prass, describing Prass as having been the "Resident Managing Director of Aon-Wisconsin's Milwaukee office since September 2001."

¶ 22. In his affidavit, Prass avers the following in direct contradiction to the comments that were alleged to have been made by Liebenstein and Pautz:

- "In my tenure with Aon-Wisconsin, it has never been the company's plan . . . to sever all of its relationships with smaller customer accounts and focus its sales efforts exclusively on larger accounts, nor has Aon-Wisconsin ever pursued such a strategy."

- "[I]t was not true in the fall of 2001, and it is not true today, that Aon-Wisconsin is 'getting rid of' relationships with smaller customer accounts or that it will pursue business relationships only with larger customer accounts."

- "While many customers have been encouraged to deal with regional service centers for routine day-to-day matters, a customer is never precluded from dealing with a local Aon-Wisconsin office."

- "The Aon-Wisconsin office has and continues to assure its customers that notwithstanding the creation of the service centers, customers may deal

with the Milwaukee office on service issues. In fact, employees in the Milwaukee office, including me, deal with customers' service needs on a regular basis."

- "[I]t was not true in the fall of 2001, and it is not true today, that Aon-Wisconsin would require customers to deal with the Glenview, Illinois service center and would not allow customers to obtain service from personnel in Aon-Wisconsin's Milwaukee office."

¶ 23. As we have seen, summary judgment may not be granted when there is a genuine issue of material fact. Wis. Stat. Rule 802.08(2). Thus, the "drastic remedy" of granting summary judgment to deny a party its day in court "should not be granted unless the material facts are not in dispute, no competing inferences can arise, and the law that resolves the issue is clear." *Lecus*, 81 Wis. 2d at 189, 260 N.W.2d at 243. Inasmuch as the truth or falsity of Liebenstein's and Pautz's alleged misrepresentations to Aon's customers while Liebenstein and Pautz were employees of Palmer & Cay is the only issue in connection with the trial court's grant of summary judgment dismissing Count Four of Aon's amended complaint, and because a reasonable jury could, based on the evidentiary submissions, find for either party, we reverse the trial court's dismissal of Count Four.[6]

---

[6] Palmer & Cay have submitted newspaper articles that their brief on appeal contends demonstrate that Liebenstein's and Pautz's comments to Aon's customers were "not . . . false." Newspaper articles, however, are "hearsay" and may not be considered on summary judgment, *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997), unless, of course, the articles are submitted by someone in a libel action against the newspaper based on those articles, or, oddly, unless they are at least

159

### 3. *Palmer & Cay's Alleged Help to Liebenstein and Pautz in Breaching Their "Agency and Other Duties to Aon."*

¶ 24. As we have seen, Count Five of Aon's amended complaint asserts claims against Liebenstein and Pautz only, and, as noted before, this appeal is only from the dismissal of Aon's claims against Palmer & Cay. Accordingly, we turn to Count Six.

¶ 25. In its brief on appeal, Aon contends that Palmer & Cay helped Liebenstein and Pautz breach their duties to Aon when, while still employed by Aon, Liebenstein and Pautz: (1) gave to Palmer & Cay confidential Aon information; (2) helped Palmer & Cay find office space for its Milwaukee office; and (3) "used Aon staff and facilities to send at least one Aon client promotional materials about Palmer & Cay." We assess Count Six in this light.

¶ 26. There is no doubt but that at least key employees in Wisconsin owe to their employer common-law duties of loyalty—the precise nature of the employment necessary to trigger those duties and, also, the scope of those duties are often blurred at the edges. *See Burg v. Miniature Precision Components, Inc.*, 111 Wis. 2d 1, 4–7, 330 N.W.2d 192, 194–195 (1983) (manager of company's thermoplastic molding department breached duty of loyalty to company by secretly having an ownership interest in a competing company) (no employment contract imposing duty of loyalty); *Hartford Elevator, Inc. v. Lauer*, 94 Wis. 2d 571, 580, 289 N.W.2d 280, 284 (1980) (theft of employer funds by mill manager was a breach of duty of loyalty owed to employer); *General Auto. Mfg. Co. v. Singer*, 19 Wis. 2d 528,

---

twenty years old, *see* Wis. Stat. Rule 908.03(16) ("ancient documents" exception to the rule against hearsay).

530–535, 120 N.W.2d 659, 660–663 (1963) (general manager of business whose duties were to solicit orders for machine shop violated contractual duty of loyalty by secretly diverting orders for his own benefit); *Modern Materials, Inc. v. Advanced Tooling Specialists, Inc.*, 206 Wis. 2d 435, 440–447, 557 N.W.2d 835, 837–840 (Ct. App. 1996) (employee not a " 'corporate officer' " or someone whose "responsibilities and authority" were at that "level" did not owe employer "fiduciary duty") (preparation while employed for starting a competing business) (no employment contract imposing duty of loyalty); *see also Burbank Grease*, 2005 WI App 28, ¶ 39, 278 Wis. 2d at 725, 693 N.W.2d at 102 ("An employee that [*sic*] is an agent for his or her employer owes the employer a duty to act solely for the benefit of the employer during the term of employment; an employee breaches that duty by secretly engaging in competition with the employer during the employment term.").

¶ 27. *Modern Materials* adopted from a federal district-court decision the following criteria as to whether an employee owes his or her employer a common-law fiduciary duty:

> In order to show that an individual breached a fiduciary duty, the first element which must be established is that the defendant is an officer and therefore a fiduciary duty is owed. An officer is "a person charged with important functions of management such as a president, vice president, treasurer, etc." Among the facts a court may consider are: (1) the individual's managerial duties; (2) whether the position occupied is one of authority; and (3) whether the individual possesses superior knowledge and influence over another and is in a position of trust.

*Id.*, 206 Wis. 2d at 443, 557 N.W.2d at 838 (quoted source

and citations omitted). In the absence of a contract imposing specific duties of loyalty, if the employee whose acts are alleged to have breached a common-law duty of loyalty to his or her employer is not an officer, the inquiry then shifts to "whether [the] employee is vested with policy-making authority or has the ability to make decisions which bind the company." *Id.*, 206 Wis. 2d at 444, 557 N.W.2d at 838. The trial court here determined as a matter of law that Liebenstein and Pautz did not fall within this rubric, and that any derivative liability of Palmer & Cay thus also fell. We disagree.

¶ 28. First, it is an issue of fact whether either Liebenstein or Pautz had the requisite managerial responsibilities in Aon's Milwaukee office to trigger their common-law duty of loyalty to Aon. Certainly, each had significant responsibilities, as evidenced by their titles and duties, that went beyond the mere ministerial.

¶ 29. Second, and most significant here, each had agreed in their employment contracts that they would not do anything that prejudiced Aon's right to their undivided loyalty. At the very least, therefore, there are facts that need to be fleshed out in connection with Liebenstein's and Pautz's duties—both common-law and, if the contracts are enforceable, contractual; we do not see with the requisite "clarity" that either Aon or Palmer & Cay are entitled to summary judgment on whether Liebenstein and Pautz owed *any* duties of loyalty to Aon, and, if they did, the scope of the duties as applicable to this case. *See Envirologix Corp.*, 192 Wis. 2d at 296, 531 N.W.2d at 366. Indeed, the precise scope of the duties owed by either Liebenstein or Pautz to Aon requires that the pertinent facts be "fully developed" at a trial. *See Bass*, 185 Wis. 2d at 890, 520 N.W.2d at 629.

¶ 30. We now move to the specific allegations that Liebenstein and Pautz breached their duties of loyalty

to Aon while working for Aon, and Palmer & Cay's liability. As we have seen, Aon's brief raises three areas where, it claims, either Liebenstein or Pautz breached their duties of loyalty to Aon while still working there. We address them in turn to determine whether what they are alleged to have done would be a breach of loyalty if they owed such a duty to Aon.

a. *Confidential Information.*

¶ 31. We have already discussed why any common-law tort claim based on the alleged misappropriation of confidential information is pre-empted by WIS. STAT. § 134.90. But, as we have also seen, both Liebenstein and Pautz had contracts that imposed on them duties to keep confidential information from competitors, and that § 134.90(6)(b)1 does not pre-empt claims based on contract. As indicated earlier, the validity of the contracts and their applicability here will have to be determined on remand. Further, as noted earlier, one who assists an employee to breach his or her duties of loyalty to his or her employer is liable to that employer for damages sustained by the employer as a result. *St. Francis Sav. & Loan Ass'n,* 65 Wis. 2d at 81, 221 N.W.2d at 844. Accordingly, Aon may maintain an action against Palmer & Cay based on contentions that Liebenstein or Pautz gave to Palmer & Cay confidential Aon information in breach of their respective employment agreements if the trial court determines on remand that the agreements are enforceable by Aon.

b. *Assistance to Palmer & Cay in Setting Up its Milwaukee Office.*

¶ 32. As indicated, there are fact issues that need to be resolved to determine whether either Liebenstein

or Pautz owed duties of loyalty to Aon when they worked there. There is evidence in the Record that while he was still working at Aon and being paid by Aon, Pautz helped Palmer & Cay find space for its new Milwaukee office. For example, he sent a letter to one of his Palmer & Cay contacts offering "a brief explanation of the lessee documents [for the proposed Palmer & Cay office space in Milwaukee] attached." The letter closed with the following upbeat assessment of the projected move to Palmer & Cay by Aon personnel:

> On behalf of the team, I want to let you know that there is a lot of enthusiasm and energy to get deal [*sic*] moving forward. We have clients as well as prospects approaching us to let them know where we wind up. There is no doubt in our minds that Palmer & Cay is the right fit for our clients and would be clients. This will be fun as well as profitable for all.

¶ 33. Although Palmer & Cay's brief on this appeal makes light of Pautz's help in securing office space for Aon's competitor while he was still working for Aon, a reasonable jury could find that this breached Pautz's non-compete employment contract, if it is determined to be enforceable, and if Pautz owed to Aon common-law duties of loyalty, those duties as well. Simply put, a reasonable jury could find that the location and cost of Palmer & Cay's Milwaukee office were factors in the potential profitability of that office.

c. *Sending Palmer & Cay Promotional Materials to One of Aon's Clients.*

¶ 34. Liebenstein testified at his deposition that when both he and his assistant, Lisa Cheke, were employed by Aon, Cheke tried to send to one of Aon's health-care customers, with whom Liebenstein had discussed the projected Aon service-center arrange-

ments, a packet of Palmer & Cay promotional materials that also touted the qualifications of a person who "heads up the Palmer & Cay health care practice in Atlanta." Although he denied during his deposition testimony that he had specifically mentioned Palmer & Cay to the Aon customer, he admitted that Cheke had told the customer that Liebenstein was going to go with Palmer & Cay, albeit contending that she disclosed that information on her own. According to Liebenstein's deposition testimony, Cheke "had put a Palmer & Cay brochure in a package that was going to [the Aon customer] in the mail room and that obviously someone from Aon opened up the sealed package and found that pamphlet in there." Apparently, though, according to a UPS document in the Record, the package was, as reflected by a stamp on the document, returned "to shipper," which was designated on the document as Aon Risk Services. Although Liebenstein disclaimed any intent that Cheke send the Palmer & Cay material to the customer, he acknowledged that someone at the customer's office had "asked her to send them something on Palmer & Cay." He also admitted that he had previously given to Cheke some Palmer & Cay promotional materials, not recalling whether he had given Cheke more than one copy.

¶ 35. Although the Palmer & Cay materials apparently never reached the Aon customer, a reasonable jury could find that trying to send the Palmer & Cay materials to that Aon customer was evidence that Liebenstein and Pautz breached duties of loyalty to Aon. Accordingly, the trial court's dismissal of Count Six of Aon's amended complaint is reversed.

4. *Punitive-Damage Claim.*

¶ 36. Aon's punitive-damage claim, asserted in Count Seven of its amended complaint, fell because the

trial court dismissed its substantive tort claims against Palmer & Cay. Thus, there has been no trial and it is premature for any assessment of whether, following presentation of Aon's evidence, a punitive-damage claim should go to the jury. Accordingly, the trial court's dismissal of Count Seven of Aon's amended complaint is reversed.

5. *Motion by Aon to Further Amend its Complaint in Milwaukee County Circuit Court case number 2002–CV-932.*

¶ 37. By motion filed March 19, 2003, Aon sought trial-court leave to file a second amended complaint to assert claims against Palmer & Cay based on Palmer & Cay's alleged intentional tortious interference with Aon's non-compete employment agreements with Liebenstein and Pautz. The trial court denied the motion, essentially for two reasons: (1) it had already orally ruled that Aon's first amended complaint against Palmer & Cay should be dismissed, and (2) it perceived the proposed second amended complaint as an end-run around that ruling: "The main thing that disturbs the Court is the fact that this is completely calculated as a response to [Palmer & Cay's] summary judgment motion." The trial court cited *Mach v. Allison*, 2003 WI App 11, 259 Wis. 2d 686, 656 N.W.2d 766, as a basis for its decision to deny Aon's motion.

¶ 38. A party's right to amend a complaint is controlled by WIS. STAT. RULE 802.09(1), which, as material here, provides:

A party may amend the party's pleading once as a matter of course at any time within 6 months after the summons and complaint are filed or within the time set in a scheduling order under s. 802.10. Otherwise a

party may amend the pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given at any stage of the action when justice so requires.

In support of its motion for leave to file its proposed second amended complaint, Aon told the trial court that it had mistakenly believed that its first amended complaint had asserted a claim against Palmer & Cay for intentional tortious interference with Aon's non-compete employment agreements with Liebenstein and Pautz (presumably in Count Six), but, after the trial court had indicated otherwise during oral argument, it wanted to fix what it conceded may have been an error in drafting so Aon could have its full day in court: "I made a mistake in not adequately alleging this claim, as the Court has ruled, and I'm simply asking for the opportunity to restate pleadings so that the merits of this claim is [sic] presented and heard, and there's plenty of time to hear it."

¶ 39. A trial court's decision granting or denying leave to file an amended complaint is vested in that court's reasoned discretion. *Mach*, 2003 WI App 11, ¶ 20, 259 Wis. 2d at 703–704, 656 N.W.2d at 774. Although the Rule's command that "leave shall be freely given at any stage of the action when justice so requires" applies before judgment is entered against the party seeking to amend its complaint, it does not apply after entry of that judgment because of the countervailing interests of the need for finality. *Id.*, 2003 WI App 11, ¶¶ 23–27, 259 Wis. 2d at 704–709, 656 N.W.2d at 774–777 ("[A]fter a motion for summary judgment has been granted, there is no presumption in favor of allowing the amendment.").

167

> [T]he party seeking leave to amend must present a reason for granting the motion that is sufficient, when considered by the trial court in the sound exercise of its discretion, to overcome the value of the finality of judgment. The reasons why the party has not acted sooner, the length of time since the filing of the original complaint, the number and nature of prior amendments, and the nature of the proposed amendment are all relevant considerations, as is the effect on the defendant. However, the absence of specific prejudice to the defendant is not a sufficient reason, in itself, for allowing amendment, because that does not give appropriate weight to the value of the finality of judgment.

*Id.*, 2003 WI App 11, ¶ 27, 259 Wis. 2d at 709, 656 N.W.2d at 777. Thus, if we were affirming the trial court's dismissal of Aon's claims against Palmer & Cay, the trial court's denial of leave to amend would be well within its discretion. Here, however, unlike the situation in *Mach*, we are *reversing* the trial court's grant of summary judgment, so the "finality" consideration falls. Thus, the "leave shall be freely given" command comes back into play. Ordinarily, we would remand to the trial court for a renewed analysis of whether leave to amend should be given, *see id.*, 2003 WI App 11, ¶ 29, 259 Wis. 2d at 711, 656 N.W.2d at 778, but there are no material countervailing considerations: Aon's claims against Palmer & Cay will be tried and the proposed amendment is within the scope of the original pleading. Accordingly, remand is not necessary because there is nothing in the Record, other than Palmer & Cay's annoyance, that militates against the "freely given" leave to which Aon is entitled under the Rule. *See Estate of Christopherson v. Neugart*, 2002 WI App 180, ¶ 38, 256 Wis. 2d 969, 994, 650 N.W.2d 52, 65 (no need to remand where contrary ruling by trial court would be an erroneous exercise of discretion); *cf. McCleary v.*

*State*, 49 Wis. 2d 263, 291, 182 N.W.2d 512, 526 (1971) (supreme court exercised sentencing discretion in lieu of remand).

## C.

¶ 40. In sum, in appeal number -2163: (1) we reverse the trial court's grant of summary judgment to Palmer & Cay dismissing Aon's amended complaint, with the exception of Aon's claim against Palmer & Cay that we have determined is pre-empted by WIS. STAT. § 134.90; (2) we affirm the trial court's order denying the motion by Liebenstein, Pautz, and Palmer & Cay for a summary-judgment ruling that the non-compete agreements are not enforceable; (3) we reverse the trial court's order *in limine* restricting the evidence that the defendants can present in support of their contention that the non-compete agreements are not enforceable; and (4) we reverse the trial court's order denying Aon leave to file its proposed second amended complaint, and remand with directions that Aon's proposed second amended complaint be accepted for filing.

## II. APPEAL NUMBER -2164

### A.

1. *Aon's Appeal.*

¶ 41. After the trial court in appeal number -2163 denied Aon's motion for leave to amend its complaint, Aon started a new action, this time against the parent company of the Palmer & Cay entities it had sued in appeal number -2163 This second action, on appeal as appeal number -2164, asserted claims against the

169

Palmer & Cay parent that were congruent with those precluded by the trial court's denial of leave for Aon to amend its complaint in the first action: a claim alleging that the Palmer & Cay parent intentionally interfered with the non-compete agreements Liebenstein and Pautz made with Aon's predecessor, and a claim for civil conspiracy based on the same allegations as the interference claim. The complaint in the new action asserted that in approximately August of 2001, "Palmer & Cay promised" both Liebenstein and Pautz, and "other Aon employees whom Palmer & Cay was recruiting for its new office in Wisconsin," that if Aon sought to enforce the non-compete agreements, Palmer & Cay would pay the employees' "legal fees to defend the litigation and would indemnify the employees from any damages awarded against them." These allegations, however, not only reprised those made in Aon's proposed second amended complaint in appeal number -2163 but were also asserted, albeit in a short-hand way, in Aon's first amended complaint in appeal number -2163. Thus, Aon alleged in its first amended complaint in appeal number -2163 that "Palmer & Cay was aware of the agency and other duties owed by the defendants Liebenstein and Pautz to Aon," and that "Palmer & Cay intentionally caused or assisted defendants Liebenstein and Pautz to breach" those alleged duties. Aon was more specific in its proposed second amended complaint in appeal number -2163, alleging that:

- Palmer & Cay knew, "[i]n the summer of 2001" that Liebenstein and Pautz had "Aon restrictive covenants";

- Before Liebenstein left Aon, he talked to Palmer & Cay's "general counsel" who told him "that Aon would not be able to enforce the Liebenstein Agreement";

- Liebenstein later "relayed the results of his conversation with Palmer & Cay's general counsel to other Aon employees, including Pautz"; and

- "On information and belief, Palmer & Cay agreed to defend and/or indemnify Liebenstein and Pautz in the event that Aon sued them for their conduct in launching the proposed Palmer & Cay Milwaukee office, including but not limited to, their conduct in violating the Liebenstein and/or Pautz agreements."

As noted, the trial court in appeal number -2163 denied Aon leave to amend its complaint in that action. As we discuss below, filing a new action is not an alternate way to amend a complaint. *See United Pac. Ins. Co. v. Metropolitan Sewerage Comm'n*, 114 Wis. 2d 258, 261, 338 N.W.2d 298, 299 (Ct. App. 1983). Indeed, a lawsuit may be dismissed in Wisconsin solely because there is already "[a]nother action pending between the same parties for the same cause." WIS. STAT. RULE 802.06(2)(a)10.

■

¶ 42. A party may not circumvent a ruling it does not like in one case (or a judge for whom the substitution-of-judge remedy is no longer available, *see* WIS. STAT. RULE 801.58) by filing a new action, *unless the second action is based on claims that could not have been brought in the first action*—such as where, for example, either the party is entitled to a jury trial in the second action but not in the "pending" action, *see Caulfield v. Caulfield*, 183 Wis. 2d 83, 90, 515 N.W.2d 278, 281 (Ct. App. 1994), or where the second action is based on things that happened after the court in the first action denied leave to file an amended complaint, *see Curtis v. Citibank, N.A.*, 226 F.3d 133, 136–140 (2d Cir. 2000); *cf. Menard, Inc. v. Liteway Lighting Prods.*, 2005 WI 98, ¶¶ 40–42, 282 Wis. 2d 582, 607–608, 698 N.W.2d 738,

750–751 (noting that, in the context of the Uniform Commercial Code and claim-preclusion principles, a judgment on a seller's action against a buyer will not bar the buyer's subsequent lawsuit asserting that the product was defective *if* the buyer discovers the defects after entry of judgment) (" 'Material operative facts occurring after the decision of an action with respect to the same subject matter may in themselves, or taken in conjunction with the antecedent facts, comprise a transaction which may be the basis of a second action not precluded by the first.' ") (quoted source omitted). Significantly, unlike Wisconsin's Wis. Stat. Rule 802.06(2)(a)10, the federal system does not have a specific rule that prevents the duplicative filing of lawsuits. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *see also Curtis*, 226 F.3d at 138; *compare* Rule 802.06(2)(a) (listing the defenses that may be raised "by motion," which includes the prior-pending-action defense), *with* Rule 12(b) of the Federal Rules of Civil Procedure (which does not recognize a prior-pending-action defense that can be "made by motion" under that rule), *and* Rule 8(c) of the Federal Rules of Civil Procedure (which does not even recognize a prior-pending-action as an affirmative defense). Thus, in the federal courts there is often an analysis that tracks claim-preclusion principles in determining whether the second action is barred by a pending first action between the same parties on the same issues. *See Curtis*, 226 F.3d at 138–140. Although the parties here focus on the intricacies of claim-preclusion, and the trial court based its decision dismissing the second action on a similar analysis, Rule 802.06(2)(a)10's declaration that the existence of an action pending between the same parties for the same cause subjects the latter-filed action to dismissal is dispositive. *See United Pac. Ins. Co.*, 114 Wis. 2d at 261,

338 N.W.2d at 299. We may, of course, affirm a trial court that reaches the right result, irrespective of the trial court's rationale. *See State v. Holt*, 128 Wis. 2d 110, 124, 382 N.W.2d 679, 687 (Ct. App. 1985)

¶ 43. Whether dismissal is warranted under WIS. STAT. RULE 802.06(2)(a)10 is left to the trial court's reasoned discretion. *Caulfield*, 183 Wis. 2d at 89, 515 N.W.2d at 281. As we have already seen, however, we may decide an issue vested in the trial court's discretion if remand would be a needless and wasteful step. *See Estate of Christopherson*, 2002 WI App 180, ¶ 38, 256 Wis. 2d at 994, 650 N.W.2d at 65. That is the situation here.

¶ 44. Although Aon represented that it brought the second action against the parent Palmer & Cay company to be assured of being able to collect any judgment it recovered in the first action, it made not even a colorable representation why the parent company could not have been joined or added in the first action, even if an underlying statute of limitations had expired (about which we make no assessment).[7] *See*

---

[7] The day after it filed its complaint in appeal number -2164, Aon's lawyers wrote to the judge in appeal number -2163 telling her about the new action and enclosing a copy of the complaint in that action. The letter explained why Aon believed it needed to file the second lawsuit:

> You will see that the new action asserts causes of action for tortious interference with contract and conspiracy against Palmer & Cay, Inc. These claims are pleaded against a different corporate entity than is before you in the original action, but otherwise arise from allegations similar to those Aon sought to add to the above-captioned case [appeal number -2163] by means of a motion to amend, which you denied last April.

WIS. STAT. RULE 802.09(3).[8] Indeed, the complaint in appeal number -2164 asserted that the defendant in that action, "Palmer & Cay, Inc. is a Georgia corporation with its principal office at 25 Bull Street, Savannah, Georgia," which was the same address its amended complaint in appeal number -2163 gave for Palmer & Cay Holdings, Inc. Aon has also not made even a colorable representation as to why the claims asserted in the second action, which encompassed claims it sought to raise in its proposed second amended complaint in the first action, and which, as we have seen, it conceded in the letter to the trial judge before whom the first action was pending, "arise from allegations similar to those" in the first action, could not have been asserted in the original action, or, if it believed that the trial court erred in

---

In filing this new action, Aon is not seeking in any way to circumvent your decision not to permit the amendment of the complaint in the action pending before you. Aon will not ask to have this new action consolidated for trial with the previously filed action. Rather, Aon has filed this new action solely to preserve its right to collect from Palmer & Cay, Inc. damages caused by the breaches of the Liebenstein and Pautz noncompete agreements, should any judgment Aon recovers in the first action prove uncollectible from the defendants in that action.

[8] WISCONSIN STAT. RULE 802.09(3) provides:

If the claim asserted in the amended pleading arose out of the transaction, occurrence, or event set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the filing of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against such party, the party to be brought in by amendment has received such notice of the institution of the action that he or she will not be prejudiced in maintaining a defense on the merits, and knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against such party.

174

denying its motion for leave to file the proposed second amended complaint, why an appeal would not have given it a chance to seek rectification of any alleged error. Simply put, as we have already noted, if a party believes that a trial court has erred, the remedy is an appeal, not a new action. *United Pac. Ins. Co.*, 114 Wis. 2d at 261, 338 N.W.2d at 299. The trial court did not erroneously exercise its discretion by preventing what it correctly saw as Aon's attempted end-run around its decision denying Aon leave to amend its complaint. We thus affirm the trial court's dismissal of Milwaukee County Circuit Court case number 2003–CV-10621.[9]

2. *Palmer & Cay's Cross-Appeal.*

¶ 45. Palmer & Cay contends that it is, contrary to the trial court's determination, entitled to frivolous-action costs and attorney fees under WIS. STAT. RULE 802.05 and § 814.025.[10] We agree.

¶ 46. As material here, WIS. STAT. § 814.025(1) (2003–04) provided: "If an action . . . commenced . . . by a plaintiff . . . is found, at any time during the proceedings or upon judgment, to be frivolous by the court, the court shall award to the successful party costs determined under s. 814.04 and reasonable attorney fees." An action was "frivolous" under that section

---

[9] Given our reversal of the trial court's order denying Aon leave to amend its complaint in appeal number -2163, the practical effect of the dismissal is now largely moot.

[10] WISCONSIN STAT. § 814.025 was repealed by S. CT. ORDER 03–06, 2005 WI 38 (eff. July 1, 2005). WISCONSIN STAT. RULE 802.05 was amended by S. CT. ORDER 03–06, 2005 WI 38 (eff. July 1, 2005). The parties do not contend that Palmer & Cay's request for frivolous-action costs and attorney fees is governed by 2005 WI 38.

if, among other things, "[t]he party or the party's attorney knew, or should have known, that the action . . . was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law." Sec. 814.025(3)(b) (2003–04).

> "A claim is frivolous under [Wis. Stat. § 814.025(3)(b)] if the party or attorney 'knew or should have known' that the claim was 'without any reasonable basis in law or equity.'" The standard is objective: "whether the [party or] attorney knew or should have known that the position taken was frivolous as determined by what a reasonable [party or] attorney would have known or should have known under the same or similar circumstances." This inquiry involves a mixed question of law and fact. "Determining what was known or should have been known involves questions of fact. Such findings of fact will not be upset unless they are against the great weight and clear preponderance of the evidence." "However, . . . the ultimate conclusion about whether what was known or should have been known supports a [determination] of frivolousness under [Section 814.025(3)(b)] is a question of law we review independently of the . . . circuit and appellate courts." "All doubts on this issue are resolved in favor of the party or attorney" whom it is claimed commenced or continued a frivolous action.

*Howell v. Denomie*, 2005 WI 81, ¶ 8, 282 Wis. 2d 130, 139–140, 698 N.W.2d 621, 625–626 (citations, quoted sources, and footnote omitted; brackets by *Howell*). In assessing what " 'a reasonable . . . attorney would have known or should have known,' " a court should consider " 'the amount of time the attorney had to prepare the document and research the relevant law; whether the document contained a plausible view of the law; the complexity of the legal questions involved; and whether the document was a good faith effort to extend or

modify the law.' " *Jandrt v. Jerome Foods, Inc.*, 227 Wis. 2d 531, 550–551, 597 N.W.2d 744, 754 (1999) (quoted source omitted). Aon does not contend that it could not determine the corporate structure of the Palmer & Cay entities when it filed its first action—as we have seen, one of the Palmer & Cay entities sued in appeal number -2163 has the same address as does the Palmer & Cay parent sued in appeal number -2164.

¶ 47. In its oral decision, the trial court found that the second action "deal[t] with the same transactions, the same facts, the same claims, and the same people," as did the first action. Those findings are, clearly, not "against the great weight and clear preponderance of the evidence." Implicit in those findings is the fact that Aon's counsel obviously knew that the second action was but a replication of, at the very least, that aspect of its first action encompassed by its attempted second amendment of its complaint. Indeed, as we have seen, Aon's counsel conceded in a letter to the trial judge before whom the first action was pending that the claims in the second action "arise from allegations similar to those" in the first action. Given the clear mandate of Wis. Stat. Rule 802.06(2)(a)10, we conclude that as a matter of law there was no "reasonable basis in law or equity" for Aon to have brought the second action, and that it has not pointed to anything that could be construed as a "good faith argument" as to why Rule 802.06(2)(a)10 did not apply to the second action, other than a "waiver" argument made in a footnote in one of its briefs. We are not bound by the parties' framing of the issues, however, *see Saenz v. Murphy*, 162 Wis. 2d 54, 57 n.2, 469 N.W.2d 611, 612 n.2 (1991), *overruled on other grounds by State ex rel. Anderson-El v. Cooke*, 2000 WI 40, 234 Wis. 2d 626, 610 N.W.2d 821,

and we did raise the RULE 802.06(2)(a)10 issue at oral argument. Moreover, a brief's addressing an issue only in a footnote is not sufficient. *See Badger III Ltd. P'ship v. Howard, Needles, Tammen & Bergendoff*, 196 Wis. 2d 891, 899 n.1, 539 N.W.2d 904, 908 n.1 (Ct. App. 1995).

¶ 48. The trial court never gave a reason why it denied Palmer & Cay's motion for frivolous-action costs and attorney fees, other than that would be "a very significant finding, one that the Court does not take lightly or make lightly." It did, however, opine that "it's right on the edge," and conceded that "other Courts could find that this was frivolous and allow for costs." We agree with the trial court that a determination that a party should pay frivolous-action costs and attorney fees is something that should not be made "lightly." Nevertheless, objectively, the law here was clear. Filing a second action when there is "[a]nother action pending between the same parties for the same cause" is improper. WIS. STAT. RULE 802.06(2)(a)10. Accordingly, we conclude that Palmer & Cay is entitled to its reasonable costs and attorney fees under WIS. STAT. § 814.025 (2003–04), and, upon remand, the trial court is to hold a hearing to determine an appropriate award.

### B.

¶ 49. In sum, in appeal number -2164: (1) we affirm the trial court's dismissal of the action, and (2) reverse the trial court's denial of frivolous-action costs and attorney fees, and remand for further proceedings.

*By the Court.*—Orders affirmed and reversed, and cause remanded with directions.